## ALVAN ROGERS & others *vs.* ROGERS & BROTHER.

Suffolk. March 4. — June 20, 1885. W. ALLEN, COLBURN, & HOLMES, JJ., absent.

If two persons enter into an oral contract, by the terms of which one agrees to sell, and the other agrees to buy, certain goods at stipulated prices during a specified time, and, after a part of the goods have been delivered and paid for according to the contract, the seller refuses to deliver the rest of the goods ordered, or to fill future orders under the contract, unless the buyer will agree to pay a higher price than that named in the contract, and the buyer consents to pay and pays the advanced price upon receipt of the goods, he cannot maintain an action against the seller for breach of the original contract.

CONTRACT for the breach of an agreement to sell goods. Trial in the Superior Court, without a jury, before *Gardner*, J., who reported the case for the determination of this court, in substance as follows:

The plaintiffs introduced evidence tending to show that, on or about July 8, 1879, the defendant, a manufacturing corporation located in Connecticut, by its agent, C. A. Hamilton, orally agreed to sell and deliver to the plaintiffs in Boston, from time to time, as ordered by them, such silver-plated ware, namely, spoons and forks, as they might need in their business, and order during the season, that is, between July and January 1, 1880, at stipulated discounts from certain list prices, and that the goods were to be paid for at the end of each month; that, pursuant to this contract, and on the day of its date and at different times previously to October 14, 1879, the plaintiffs ordered goods amounting in the aggregate to several thousand dollars, a part of which were delivered and paid for according to the contract; that, on said October 14, the defendant utterly repudiated its contract, and refused to fill any of the unfilled orders, or to receive and fill any future orders, except upon the express promise on the part of the plaintiffs to pay for the goods at a less rate of discount than that stipulated in the contract, the effect of which was to advance the price of said goods about eight and one fourth per cent on the agreed price; that the plaintiffs, after several days' delay, and not being able to buy the goods elsewhere on so favorable terms, or at any price, agreed to buy them

of the defendant during the remainder of the season upon the new terms demanded by the defendant.

All the evidence relating to the repudiation and refusal of the defendant, and of the subsequent agreement of the parties, is contained in the following correspondence :

On October 14, 1879, the defendant wrote to the plaintiffs as follows: " My. attention has just been called to the fact that, in remitting for bills for the months of July and August, you have deducted fifty per cent in place of forty, and then taken in addition all extra discounts allowable for quantity and cash settlements. I do not know upon what authority or why you did this. I cannot think that any one can have offered you such terms. The difference amounts to about twenty per cent, and, of course, it is absurd to presume that we can stand any such deduction from our bills ; perhaps it was done inadvertently. I write now that there may be no misapprehension in the future. We cannot allow the change of discount from forty per cent, as we invariably invoice, and expect the figures we give, less, if you please, the extra discounts for rebates and cash." And, on October 20, as follows: " We wrote you under date of October 14, in regard to prices and terms of settlement, to which we have no response. We are awaiting your reply before shipping goods ordered, as we must know that you accept our terms as therein stated, else we must decline to fill your orders."

On October 22, the plaintiffs sent the following telegram to the defendant: " Terms accepted for the present. Ship everything next express." And, on October 24, the following: " We telegraphed acceptance terms. Are goods coming?"

On October 24, the defendant wrote to the plaintiffs as follows: " We are in receipt of your telegram accepting our terms, and shall be able to ship some goods to you to-morrow. The telegram we have reference to is yours of to-day. We have not previously received one."

On October 25, the plaintiffs wrote to the defendant as follows: " Enclosed settlement is in accordance with written agreement with Mr. C. A. Hamilton, and cannot be affected by our telegram which you should have received. It reads, 'Oct. 22d, terms accepted for the present. Ship everything next express.' We were obliged to consent to this to get our goods sold by us.

We trust, however, you will waive your repudiation of contract with us when we come to a better understanding after a personal interview."

On October 27, the defendant replied by letter as follows: " We are in receipt of your favor of the 25th, in which you refer to a ' written agreement with C. A. Hamilton' justifying the terms of settlement you claim on goods sent you during the months of July, August, and September. We know nothing of any agreement whatever, and whatever it may be, in so far as it differs from my offer of October 14th, you must consider it as cancelled or ' repudiated' on all goods invoiced by us since October 14. It is only by the recognition of the terms therein proposed that you can expect us to fill your orders now in hand or that you may send us in the future."

Under the agreement disclosed in the correspondence, the plaintiffs, from time to time during the remainder of the season, ordered goods of the defendant, and they were shipped and paid for according to the agreement contained in the defendant's letter of October 14, and the plaintiffs' telegram of October 24. It was also admitted that the orders unfilled on October 14 were subsequently filled and paid for at said advanced prices.

It was agreed that the total amount of orders given prior to October 14, and filled subsequently at said advanced prices, was $1604.99 at list prices; that the difference between the price originally agreed upon and said advanced price was $130.08; that the amount of orders given after October 14, and filled at said advanced price, was $7380.13 at list prices; and that the difference between the price originally agreed upon and said advanced price was $578.15.

The judge found, as of fact, that the contract was made as alleged.

The plaintiffs asked the judge to rule, that the defendant, having, by its letters of October 14 and 20, repudiated its contract of July 8, and refused to deliver any more goods under said contract, had committed a breach of that contract; that the plaintiffs had not waived said breach; that, for said breach, the defendant was liable in this action for the damages thereby sustained by the plaintiffs; and that there was no rescission of

the contract of July 8 disclosed by the correspondence. The judge declined so to rule.

The defendant contended that there was no contract between the parties; that if their dealings resulted in a contract, no action could be maintained thereon, under the statute of frauds; that the defendant's letter of October 14, and the plaintiffs' telegram of October 24, constituted a rescission of the same; that the defendant's revocation of the contract, if any, by said letter of October 14, was lawful; that the payment of said advanced prices were voluntary payments; and that, upon all the evidence, the plaintiffs could not maintain this action.

The judge ruled that the payment of said advanced prices by the plaintiffs was a voluntary payment; and, on this ground alone, found for the defendant.

If the judge erred in said ruling, or refusal to rule, and if, upon the foregoing evidence and findings, the plaintiffs could maintain their action, judgment was to be entered in their favor for the sum of $130.08, or the sum of $578.15, or both sums, as the court might decide the plaintiffs entitled; otherwise, for the defendant.

*D. C. Linscott*, for the plaintiffs.

*S. H. Tyng*, for the defendant.

FIELD, J. We infer from the report, that the court found that the contract was not merely an offer by the defendant to sell, which would have been revocable at any time, except so far as it had been accepted by the plaintiffs in giving orders, and would thus be a contract only to the extent of those orders; but that it was a contract whereby the plaintiffs agreed to buy, and the defendant agreed to sell, such of the goods dealt in by the defendant as the plaintiffs needed in their trade during the time specified. See *Dickinson* v. *Dodds*, 2 Ch. D. 463. The plaintiffs were bound in law to pay for the goods sent after the new agreement was made according to the prices stipulated in that agreement. In this Commonwealth the delivery of the goods by the defendant under the new agreement, whether they were sent to fill the orders given before October 14, or the orders given after, is considered a sufficient consideration for the new promise of the plaintiff. Whether the new agreement was substituted for the old, and thus operated as a rescission or discharge of it, must

be determined by the intention of the parties, to be ascertained from their correspondence and conduct. *Munroe* v. *Perkins*, 9 Pick. 298. *Cummings* v. *Arnold*, 3 Met. 486. *Stearns* v. *Hall*, 9 Cush. 31. *Holmes* v. *Doane*, 9 Cush. 135. *Peck* v. *Requa*, 13 Gray, 407. *Lawrence* v. *Davey*, 28 Vt. 264. *Stewart* v. *Keteltas*, 36 N. Y. 388. *Cooke* v. *Murphy*, 70 Ill. 96. *Moore* v. *Detroit Locomotive Works*, 14 Mich. 266.

If we assume that the original agreement was sufficiently definite to constitute a valid contract, as it was a continuing contract, the parties could clearly substitute for it a new contract, which should determine their rights and liabilities after the new contract was made, and this would operate as a waiver or discharge of the first contract as to future orders and deliveries, unless it appeared that the first contract had been broken by an absolute refusal on the part of the defendant to perform it, and that the new contract was not intended to be a discharge of the breach. As to the orders given before October 14, which the defendant had refused to fill, if the new contract by its terms covered those, we think the same rule holds. If the parties agreed that these orders should be filled at the prices stipulated for in the new contract, without considering whether the new agreement would of itself be a discharge of these partial breaches, performance of the new agreement would operate as a discharge, or an accord and satisfaction, unless it appeared that such was not the intention of the parties. Such a substituted agreement *prima facie* takes the place of the original agreement as to everything remaining unperformed.

Our construction of the correspondence and conduct of the parties is, that it was not understood or intended by both parties that the plaintiffs should retain their right of action, if they had any, for the alleged breach of the original contract.

*Judgment for the defendant.*