LINGENFELDER *et al.*, *Executors*, v. THE WAINWRIGHT BREWING COMPANY, *Appellant.*

DIVISION TWO.

1. **Practice**: REFEREE'S REPORT: SETTING ASIDE. While a referee's finding, if there is evidence tending to support it, is conclusive, yet his conclusions of law, if erroneous, may be set aside by the court and the law properly applied.

Lingenfelder v. The Wainwright Brewing Co.

2. **Contract**: CONSIDERATION : NUDUM PACTUM. Where the architect engaged in the erection of a brewery refuses to proceed with his undertaking upon discovering that the contract for the refrigerating plant had been awarded to a business rival of the refrigerating company of which he was president, takes away his plans and withdraws his superintendent in charge of the building, a promise by the president of the brewery company, who was in great haste to have the building completed, to pay such architect a commission of five per cent. upon the cost of the refrigerating plant, as an inducement to resume work, is void for want of a consideration.

*Appeal from St. Louis City Circuit Court.*— HON. SHEPARD BARCLAY, Judge.

REVERSED.

THE second amended petition upon which this cause was tried alleges that Edmund Jungenfeld "during his lifetime, to-wit, from the eighteenth day of June, 1883, to the twentieth day of December, 1884, at the special instance and request of the defendant (which request was made shortly before the commencement of said work, to-wit, on the sixteenth day of June, 1883), performed work and labor for said defendant as architect in forming and drawing plans and in superintending the erection for said defendant of a certain brewery building, together with all the outhouses, outbuildings, erections and improvements belonging to, connected with or used in connection with said brewery, and all engines, boilers, machinery, apparatus and fixtures in and about the same ;" that the entire gross cost of the said buildings, improvements, apparatus and machinery amounts to the sum of $354,227.30, as will more fully appear from the itemized statement of the cost thereof contained in exhibit " A," and that five per centum thereof, to wit, the sum of $17,711.36, is the reasonable value of the work and labor so performed by the said Jungenfeld ; that defendant has paid on account of said work and labor the sum of $10,500, leaving the balance of $7,211.30 due, for which plaintiffs sue.

The answer is, *first*, a denial of each and every allegation of the second amended petition, and, *next*, the averment of a counterclaim alleging that, on said sixteenth day of June, 1883, the said Jungenfeld agreed to make the plans for and to superintend the erection of the stock-house, one of the buildings enumerated in exhibit " A," which was to be constructed with wooden floors, to be covered with a layer of asphalt to make them water-tight; that as such superintendent it was the duty of the deceased to see that all work in and upon said stock-house was carefully and properly done, and to cause the same to be so done; that, in disregard of his said duty, the deceased negligently suffered and permitted said wooden floors to be improperly laid, and to be laid in disregard of the requirements of the plan for their construction, in consequence whereof defendant was compelled to have them taken up and laid anew at an expense and loss of $3,000, for which it asks judgment.

The reply admits that on the sixteenth day of June, 1883, the said Jungenfeld agreed and undertook to make plans for and superintend the erection and construction of said stock-house, and affirms that the same is a part of the contract set forth in the petition; but denies all other allegations of affirmative matter in said answer contained.

The cause was referred to Frederick A. Wislizenus to try all the issues therein. The referee heard the case, and on the second of July, 1886, filed his report, and returned into court with his said report the testimony taken by him in the cause.

In the hearing before the referee it was shown that Jungenfeld, on or about the sixteenth of June, 1883, entered into contract with the Wainwright Brewery Company to design the plans and make the drawings and specifications for certain brewery buildings which the company was then about to erect, and to superintend their construction to completion for a commission of five

per cent. on the cost of the building; and defendant at the very outset of the hearing conceded that the cost of said building was $220,405.93.

Plaintiffs claimed that the deceased was also entitled to commission on the cost of grading the premises done before the buildings were commenced, and on the cost of a refrigerator plant; all of which defendant denied.

The items in dispute were grouped under seven general heads, representing an aggregate cost of $133,821.37. The referee found that the deceased "was employed as architect and superintendent of the architectural work only, and that the preliminary grading, the subsequent purchasing and placing of machinery—in a word, all the items as to which I have found against the plaintiffs were not in the scope of Mr. Jungenfeld's employment."

The referee found that the total cost of all the work within the terms and scope of Jungenfeld's contract with the brewery company was $235,479.13, and allowed a commission of five per cent. thereon, amounting to $11,773.96, from which he deducted the credit of $10,500 given in the petition, leaving a balance of $1,273.96, for which he found for the plaintiffs on the cause of action set forth in the petition.

Upon the defendant's counterclaim the referee found that the floors of the stock-house were improperly laid; that deceased was responsible for the defect, and that the defendant in remedying it was necessarily put to an expense of $2,716.36, for which sum the referee found in favor of the defendant and against the plaintiffs; and, deducting from the amount so found to be due the defendant on the counterclaim the amount found to be due the plaintiffs on the cause of action set forth in the petition, the referee found the plaintiffs to be indebted to the defendant in the sum of $1,492.17, for which amount he recommended judgment in favor

of defendant and against plaintiffs as executors of the deceased.

Upon the coming in of the referee's report plaintiffs filed their exceptions to the same. The tenth exception ( *and the only one involved in the present controversy* ) is as follows: " *Tenth*. Because the referee found against plaintiffs' right to compensation on the item of 'refrigerating plant' and disallowed the same."

The court overruled all of said exceptions, *except the tenth*, which it sustained in and by the following order:

"Wednesday, March 9, 1887.

"Now at this day, the exceptions heretofore filed herein by the plaintiffs to the referee's report being submitted to the court, and duly considered, it is ordered that so much of said exceptions as refer to the disallowance by the referee of the item of commission or percentage on the refrigerator plant be sustained, and that this cause be re-referred to Frederick A. Wislizenus, and that said referee be and is hereby directed to allow plaintiffs credit on that item, and that he make a report of his proceedings herein with all convenient speed. And it is further ordered that all the other exceptions of plaintiffs herein be overruled."

And defendant then and there duly excepted to the action of the court in sustaining said exception of plaintiffs, and in directing said referee to allow plaintiffs credit for the compensation or percentage on the refrigerator plant, and in directing him to state the account anew on that basis.

And afterward, to-wit, on the twenty-third day of March, 1887, the parties, plaintiffs and defendant, made and filed the following stipulation in said cause, to-wit :

" The parties, plaintiffs and defendant, to the above-entitled cause, hereby waive a re-reference of the cause as heretofore directed by the court, and agree that the court may, upon the facts and evidence reported

by the referee, pronounce the conclusion of law and enter judgment accordingly.

> "DEXTER TIFFANY,
> "B. SCHNURMACHER,
>   "Attorneys for Plaintiffs.
> "KEHR & TITTMAN,
>   "Attorneys for Defendant."

And thereupon the court entered the following judgment:

"Monday, April 4, 1887.

"Now again come said parties, and the court, having duly considered the report of said referee and the evidence by him reported and returned into court, doth find the issues herein joined as follows: On plaintiffs' cause of action in favor of plaintiffs in the sum of $4,720.71, and on defendant's counterclaim in favor of said defendant in the sum of $2,766.13. It is, therefore, considered by the court that plaintiffs recover of said defendant the sum of $1,954.58 and their costs in this behalf expended, and have execution therefor."

And within four days thereafter, to-wit, on the fifth day of April, 1887, defendant filed its motion for new trial in said cause for the reasons following, to-wit:

"*First.*  Because the court erred in allowing the plaintiffs credit for the item of commission or percentage on the refrigerator plant, to-wit: The sum of $3,446.75, and erred in including the latter in the sum, for which the court finds for the plaintiffs on their cause of action.

"*Second.*  Because, upon the special findings of fact made by the referee in his report concerning said item, and upon the evidence returned by him regarding the same, the plaintiffs are not entitled to said commission or percentage, and the finding upon said item should have been for defendant.

"*Third.*  Because the court erred in its conclusion of law upon the facts found, and the evidence reported by the referee in respect to said item.

"*Fourth.* Because, upon the facts found and upon the evidence reported by the referee, the court should have found only for the plaintiffs on their cause of action for the sum of $1,273.96, and it was error to find for them any sum in excess of said sum of $1,273.96.

"*Fifth.* Upon the facts found by the referee and the evidence returned by him with his report, the judgment should have been for the defendant for the amount recommended by the referee, with interest and costs."

The court overruled the motion for new trial, and defendant appealed.

The controversy in the court below finally turned upon the single question whether or not, upon the facts found by the referee and the evidence returned by him, the deceased was entitled to commissions on the cost of the refrigerator plant. In considering the subject, it should be borne in mind that Jungenfeld's contract with the brewery company was made on or about the sixteenth of June, 1883; that under and by it he undertook to design the buildings and superintend their erection to completion; that the superintending or placing of machinery in the building was no part of his contract, *and that the claim for commissions on the cost of the refrigerator plant is based solely on a subsequent promise*, the facts of which are thus found and stated by the referee.

The refrigerator plant "was ordered not only without Mr. Jungenfeld's assistance, but against his wishes. He was in no way connected with its erection. Plaintiffs' claim as to this item rests on a distinct ground, as to which I make the following finding of facts:

"Mr. Jungenfeld was president of the Empire Refrigerating Company, and was largely interested therein. The De La Vergne Ice Machine Company was a competitor in business. Against Mr. Jungenfeld's wishes, Mr. Wainwright awarded the contract for the refrigerating plant to the De La Vergne Company. The brewery was at the time in process of erection and most

of the plans were made. When Mr. Jungenfeld heard that the contract was awarded he took away his plans, called off his superintendent on the ground and notified Mr. Wainwright that he would have nothing more to do with the brewery. The defendant was in great haste to have its new brewery completed for divers reasons. It would be hard to find an architect to fill Mr. Jungenfeld's place, and the making of new plans and arrangements when another architect was found would involve much loss of time. Under these circumstances Mr. Wainwright promised to give Mr. Jungenfeld five per cent. on the cost of the De La Vergne ice machine, if he would resume work. Mr. Jungenfeld accepted, and fulfilled the duties of superintending architect till the completion of the brewery.

"It is not clear to me how plaintiffs can bring their claim for this extra compensation on special agreement under their petition, which asks for the *quantum meruit* of Mr. Jungenfeld's labor ; but I pass all questions of pleading and treat the claim as properly before me, since it is desirable that this report should present findings as to the merits of all branches of the case.

"What was the consideration for defendant's promise to pay five per cent. on the cost of the refrigerating plant, in addition to the regular charges ?

"Plaintiffs submit two theories accounting for the consideration :

"*First.* It is claimed that the transaction was the compromise of a doubtful claim. *I do not find that Mr. Jungenfeld claimed that defendant had broken the contract or intended to do so.* I infer that Mr. Jungenfeld had confidently expected to get for his 'Empire Company' the contract for putting the refrigerating plant into the Wainwright brewery. When the De La Vergne machine was selected, he felt disappointed, aggrieved, angry ; *but I can find in the whole record no evidence that he ever claimed that any of his legal rights had been violated.* With this understanding of the evidence,

I find no basis for upholding defendant's promise to pay commission on this refrigerating plant as the compromise of any doubtful claim.

"*Second.*   Plaintiffs also contend that the original contract between the parties was abrogated ; that a new contract was entered into between the parties, differing from the old only in the fact that defendant was to pay a sum over and above the compensation agreed on in the discarded original contract. The services to be performed ( and thereafter actually performed ) by Jungenfeld would, in this view, constitute a sufficient consideration.

"Such a principle has been recognized in a number of cases :   *Monroe v. Perkins*, 9 Pick. 305; *Holmes v. Doane*, 9 Cush. 135 ; *Lattimore v. Harsen*, 14 Johns. 330 ; *Peck v. Requa*, 13 Gray, 408.

"Without discussing the legal doctrine involved (of the accuracy of which I may say, however, I am not convinced ), I do not think the case in hand warrants its application.   I find in the evidence no substitution of one contract for another.   As I understand the facts, and as I accordingly formally find, defendant promised Mr. Jungenfeld a bonus to resume work and complete the original contract under the original terms.   This case seems to me analogous to that of seamen, who when hired for a voyage, under threats of desertion in a foreign port, receive promises of additional compensation. It has been uniformly held that they could not recover.

"I accordingly submit that in my view defendant's promise to pay Mr. Jungenfeld five per cent. on the cost of the refrigerating plant *was without consideration*, and recommend that the claim be not allowed."

The referee's finding of fact is based on the testimony of Adolphus Busch, Phillip Stock, Ellis Wainwright, and is amply borne out by the testimony.

Upon this state of facts the referee was of opinion that the promise to pay the five-per-cent. commissions on the cost of the refrigerator plant was void,

and the claim should be rejected ; whereas the learned circuit judge was of opinion that the promise was good in law, and that the commission should be allowed ; and *this question of law is the sole matter presented by this record.*

*Kehr & Tittmann* for appellant.

(1) The report of the referee is equivalent to a special verdict, and, where there is evidence tending to establish the fact found, the court will not disturb the referee's finding. *Ferry Co. v. Railroad,* 73 Mo. 389 ; *Woodrow v. Young,* 61 Mo. 395 ; *Ass'n v. Kribben,* 48 Mo. 37 ; *Franz v. Dietrick,* 49 Mo. 95 ; *Reynolds v. Robinson,* 82 N. Y. 106. But upon the evidence returned by the referee with his report, there can be no fair doubt of the correctness of his finding of fact in regard to the claim for commissions on the refrigerator plant. (2) Neither the promise to do a thing, nor the actual doing of it, will be a good consideration, if it is a thing which the party is already bound to do, either by the general law or by a subsisting contract. Such promise is without consideration and void. Pollock's Principles of Contract [1 Am. from 2 Eng. Ed.] pp. 162–3 ; [4 Ed.] pp. 176–7 ; Leake on Contracts [2 Ed.] 1878, pp. 619–21 ; 1 Chitty on Contracts [11 Am. Ed.] 60 ; Anson on Contracts [2 Am. Ed. by Knowlton] 82–3 ; Hare on Contracts, 216 ; *Bartell v. Wyman,* 14 John. 260 ; *Farrington v. Bullard,* 40 Barb. 512 ; *Tilden v. New York,* 56 Barb. 340–61 ; *Conover v. Stillwell,* 34 N. J. L. 57 ; *McCabe v. Price,* 12 Ala. 753 ; *Reynolds v. Nugent,* 25 Ind. 328 ; *Cobb v. Cowdery,* 40 Vt. 25–8 ; *Ayres v. Railroad,* 52 Iowa, 478–87 ; *Proctor v. Keith,* 12 B. Monroe, 252 ; *Eblin v. Miller,* 78 Ky. 371 ; *Kick v. Merry,* 23 Mo. 72 ; *Tucker v. Bartle,* 85 Mo. 114 ; *Swaggard v. Hancock,* 25 Mo. App. 606–7 ; *Wimer v. Township,* 104 Pa. St. 317–20 ; *McCarty v. Ass'n,* 61 Iowa, 287.

*Rassieur & Schnurmacher* for respondents.

(1) *First.* The report of a referee in an action at law has the effect of a special finding by a jury. *Woodrow v. Younger*, 61 Mo. 395; *State ex rel. v. Burckhartt*, 83 Mo. 430; *Dunlap v. Social Club*, 25 Mo. App. 180; *Newman v. Newman*, 29 Mo. App. 649. *Second.* The sustaining of exceptions to the referee's report, and the order again referring the cause, were equivalent to the setting aside of a verdict and the granting of a new trial. *Kennard v. Peck*, 19 Mo. App. 342; *Rice v. Benedict*, 18 Mich. 75; *Goulard v. Castillon*, 12 Barb. (N. Y.) 126. *Third.* The case then stood ready for a retrial. "A report set aside leaves the cause as if it had never been tried, and there is left neither evidence nor finding, but merely an issue of fact, requiring trial before judgment can be given. *Rice v. Benedict*, 18 Mich. 75. (2) Thereupon the stipulation of the parties waiving a re-reference and agreeing "that the court may, upon the facts and evidence reported by the referee, pronounce the conclusion of law and enter judgment accordingly," amounted either: *First.* To a judgment by consent for such an amount as the court, from a reading of the evidence, might conclude proper; or, *second,* to a trial of the cause before the court, without a jury upon the same evidence heard before the referee, and by him returned with his report. (3) Where a cause is tried by the court, without a jury, and no instructions are asked, given or refused, and no exceptions are saved to the admission or exclusion of evidence, and there is any evidence at all, on which to sustain the judgment, on any theory, the appellate court will assume that the court below applied proper legal principles to the facts developed at the trial, and will not disturb the judgment. *Hamilton v. Boggess*, 63 Mo. 233; *Waddell v. Williams*, 50 Mo. 216; *Gaines v. Fender*, 82 Mo. 497;

*Johnson v. Lullman*, 88 Mo. 567. ( 4 ) In this case there was sufficient proof to sustain the judgment. *First.* The only evidence as to the value of the services was that five per cent. on the gross cost of the improvements was reasonable. *Second.* There was ample proof that the deceased superintended more than the mere buildings, as claimed by defendant. *Third.* But, even if the evidence, that five per cent. of the gross cost of the improvements was a reasonable compensation, would not cover the "refrigerating plant," or "ice machine," the special promise would. *Goebel v. Linn*, 47 Mich. 289 ; *Moore v. Locomotive Works*, 14 Mich. 266 ; *Bishop v. Busse*, 69 Ill. 403 ; *Peck v. Requa*, 13 Gray, 408 ; *Lattimore v. Harsen*, 14 Johns. (N. Y.) 330 ; *Coyner v. Lynde*, 10 Ind. 282 ; *Rollins v. Marsh*, 128 Mass. 116 ; *Holmes v. Doane*, 9 Cush. (Mass.) 135 ; *Munroe v. Perkins*, 9 Pick. 298 ; *Cooke v. Murphy*, 70 Ill. 96 ; *Rogers v. Rogers*, 139 Mass. 440 ; *Stewart v. Keteltas*, 36 N. Y. 388, 392 ; *Lawrence v. Davey*, 28 Vt. 264 ; *Osborne v. O'Reilly*, 42 N. J. Eq. 467. ( 5 ) Where a contract is fully performed, a party may recover, not exceeding the contract price, on a *quantum meruit*. *Mansur v. Botts*, 80 Mo. 651 ; *Floerke v. Distilling Co.*, 20 Mo. 76 ; *Crump v. Rebstock*, 20 Mo. App. 37. ( 6 ) Defendant not having filed a sufficient or, indeed, any abstract of the evidence, this court is not enabled, from anything furnished by defendant, to determine whether or not the lower court's findings are correct. Defendant's brief contains the referee's conclusions ( which are no longer in the case ) but not the evidence. For this reason alone, the court may affirm the judgment. *Jayne v. Wine*, 98 Mo. 404 ; *Nichols v. Nichols*, 39 Mo. App. 291.

GANTT, P. J.—It is not only conceded but urged by counsel on both sides, that the finding of the referee is equivalent to a special verdict, and, where there is evidence tending to establish the facts found, the court will

not disturb the referee's finding. *Wiggins Ferry Co. v. Railroad*, 73 Mo. 389. Nor is it questioned that, while the referee's findings are conclusive as to the facts, his conclusions as to the law may, if erroneous, be set aside and the law properly applied, by either the trial or appellate court. *Gamble v. Gibson*, 83 Mo. 290.

Upon the coming in of the referee's report in this cause, the plaintiffs filed various exceptions. The circuit court overruled all those exceptions except the tenth. This exception simply raised the question of law on the facts found. Under this state of case, there was no occasion to refer the case back to the referee, as it was as competent for the circuit court to adopt the facts found and apply the law, as it was to send it back with the direction to allow plaintiffs credit on the disputed item involved in this tenth exception. To avoid this re-reference counsel stipulated that "the court might, upon the facts and evidence reported by the referee, pronounce the conclusion of law and enter judgment accordingly."

The learned counsel for the respondents invite us to indulge in the presumption that the circuit court disregarded the findings of the referee and examined the evidence for himself, and, if there was any evidence to support the judgment, this court ought not to reverse. The argument is more specious than ingenuous. This court has held that in a law case the court must either accept or set aside altogether the findings of fact by the referee. This, we take it the court did in this case. He evidently accepted the facts as found, and disagreed with the referee only as to the law on the tenth exception, and we so construe the stipulation. In the light of the record, it will not bear any other construction. Hence we shall confine this discussion to the one issue raised by the tenth exception to the referee's report.

The referee found that Jungenfeld, the plaintiffs' testator, was not entitled to the commission of five per

cent. on the cost of the refrigerator plant. He found that Jungenfeld's employment as architect was to design plans and make drawings and specifications for certain brewery buildings for the Wainwright Brewery Company and superintend their construction to completion for a commission of five per cent. on the cost of the buildings. He found further that Jungenfeld's contract did not include the refrigerator plant, that was to be constructed in these buildings. He further found, and the evidence does not seem to admit of a doubt as to the propriety of his finding, that this refrigerator plant was ordered not only without Mr. Jungenfeld's assistance, but against his wishes. He was in no way connected with its erection.

"Mr. Jungenfeld was president of the Empire Refrigerating Company and largely interested therein. * * * The De La Vergne Ice Machine Company was a competitor in business. * * * Against Mr. Jungenfeld's wishes Mr. Wainwright awarded the contract for the refrigerating plant to the De La Vergne Company. * * * The brewery was at that time in process of erection and most of the plans were made. When Mr. Jungenfeld heard that the contract was awarded he took his plans, called off his superintendent on the ground, and notified Mr. Wainwright that he would have nothing more to do with the brewery. The defendant was in great haste to have its new brewery completed for divers reasons. It would be hard to find an architect in Mr. Jungenfeld's place and the making of new plans and arrangements when another architect was found would involve much loss of time. *Under these circumstances* Mr. Wainwright promised to give Jungenfeld five per cent. on the cost of the De La Vergne ice machine if he would resume work. Jungenfeld accepted and fulfilled the duties of superintending architect till the completion of the brewery.

"As I understand the facts and as I accordingly formally find defendant promised Jungenfeld a bonus

to resume work and complete the *original* contract under the *original* terms.

"I accordingly submit that in my view defendant's promise to pay Jungenfeld five per cent. on the cost of the refrigerating plant *was without consideration, and recommend that the claim be not allowed.*"

The referee also finds "that Mr. Jungenfeld never claimed that defendant had broken the contract or intended to do so, or that any of his legal rights had been violated."

The learned circuit judge, upon this state of facts, held that the defendant was liable on this promise of Wainwright to pay the additional five per cent. on the refrigerator plant. The point was duly saved, and from the decision this appeal is taken.

Was there any consideration for the promise of Wainwright to pay Jungenfeld five per cent. on the refrigerator plant ? If there was not, plaintiff cannot recover the $3,449.75, the amount of that commission. The report of the referee, and the evidence upon which it is based, alike show that Jungenfeld's claim to this extra compensation is based upon Wainwright's promise to pay him this sum to induce him, Jungenfeld, to complete his original contract under its original terms.

It is urged upon us by respondents that this was a new contract. New in what ? Jungenfeld was bound by his contract to design and supervise this building. Under the new promise he was not to do anything more or anything different. What benefit was to accrue to Wainwright. He was to receive the same service from Jungenfeld under the new that Jungenfeld was bound to tender under the original contract. What loss, trouble or inconvenience could result to Jungenfeld that he had not already assumed ? No amount of metaphysical reasoning can change the plain fact that Jungenfeld took advantage of Wainwright's necessities, and extorted the promise of five per cent. on the refrigerator plant, as the condition of his complying with his

contract already entered into. Nor had he even the flimsy pretext that Wainwright had violated any of the conditions of the contract on his part.

Jungenfeld himself put it upon the simple proposition, that "if he, as an architect, put up the brewery, and another company put up the refrigerating machinery, it would be a detriment to the Empire Refrigerating Company" of which Jungenfeld was president. To permit plaintiff to recover under such circumstances, would be to offer a premium upon bad faith, and invite men to violate their most sacred contracts, that they may profit by their own wrong.

"That a promise to pay a man for doing that which he is already under contract to do is without consideration," is conceded by respondents. The rule has been so long imbedded in the common law and decisions of the highest courts of the various states that nothing but the most cogent reasons ought to shake it. *Harris v. Carter*, 3 E. & B. 559 ; *Stilk v. Myrick*, 2 Camp. 317 ; 1 Chitty on Contracts [11 Amer. Ed.] 60 ; *Bartlett v. Wyman*, 14 Johns. 260 ; *Reynolds v. Nugent*, 25 Ind. 328 ; *Ayres v. Railroad*, 52 Iowa, 478 ; *Festerman v. Parker*, 10 Ind. 474; *Eblin v. Miller*, 78 Ky. 371 ; *Sherwin & Co. v. Brigham*, 39 Ohio St. 137; *Overdeer v. Wiley*, 30 Ala. 709 ; *Jones v. Miller*, 12 Mo. 408; *Kick v. Merry*, 23 Mo. 72 ; *Laidlou v. Hatch*, 75 Ill. 11 ; *Wimer v. Overseers of Poor*, 104 Penn. St. 317 ; *Cobb v. Cowdery*, 40 Vermont, 25 ; *Vanderbilt v. Schreyer*, 91 N. Y. 392.

But "it is carrying coals to New Castle" to add authorities on a proposition so universally accepted and so inherently just and right in itself. The learned counsel for respondents do not controvert the general proposition. Their contention is, and the circuit court agreed with them, that, when Jungenfeld declined to go further on his contract, the defendant then had the right to sue for damages, and not having elected to sue

Jungenfeld, but having acceded to his demand for the additional compensation, defendant cannot now be heard to say his promise is without consideration. While it is true Jungenfeld became liable in damages for the obvious breach of his contract, we do not think it follows that defendant is estopped from showing its promise was made without consideration.

It is true that as eminent a jurist as Judge COOLEY, in *Goebel v. Linn*, 47 Michigan, 489, held that an ice company which had agreed to furnish a brewery with all the ice they might need for their business from November 8, 1879, until January 1, 1881, at $1.75 per ton, and afterwards in May, 1880, declined to deliver any more ice unless the brewery would give it $3 per ton, could recover on a promissory note given for the increased price. Profound as is our respect for the distinguished judge who delivered that opinion, we are still of the opinion that his decision is not in accord with the almost universally accepted doctrine and is not convincing, and certainly so much of the opinion as holds that the payment by a debtor of a part of his debt then due would constitute a defense to a suit for the remainder is not the law of this state, nor do we think of any other where the common law prevails.

The case of *Bishop v. Busse*, 69 Ill. 403, is readily distinguishable from the case at bar. The price of brick increased very considerably, and the owner changed the plan of the building, so as to require nearly double the number ; owing to the increased price and change in the plans, the contractor notified the party for whom he was building, that he could not complete the house at the original prices, and, thereupon, a new arrangement was made, and it is expressly upheld by the court on the ground that the change in the buildings was such a modification as necessitated a new contract. Nothing we have said is intended as denying parties the right to modify their contracts, or make new

contracts, upon new or different considerations and binding themselves thereby.

What we hold is that, when a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as *nudum pactum*, and will not lend its process to aid in the wrong.

So holding, we reverse the judgment of the circuit court of St. Louis, to the extent that it allow the plaintiffs below, respondents here, the sum of $3,449.75, the amount of commission at five per cent. on the refrigerator plant; and, at the request of both sides, we proceed to enter the judgment here, which, in our opinion, the circuit court of St. Louis should have entered, and accordingly it is adjudged that the report of the referee be in all things approved, and that defendant have and recover of plaintiffs as executors of Edmund Jungenfeld the sum of $1,492.17 so found by the referee with interest from March 9, 1887. All the judges of this division concur.