GEORGE R. KING v. DULUTH, MISSABE & NORTHERN RAILWAY
COMPANY.[1]

June 28, 1895.

Nos. 9273—(167).

**Contract—Promise of Additional Compensation—Consideration.**

> *Held,* that the allegations of the complaint as to plaintiff's supposed
> first cause of action bring the case within the general rule that the prom-
> ise of a party to a contract to do, or the doing of, that which he is al-
> ready legally bound to do is not a valid consideration to support the prom-
> ise of the other party to pay him an additional compensation for such
> performance, and that they do not state a cause of action.

**Same.**

> *Held* that, where one party to a contract refuses to perform it unless
> promised some further pay or benefit than the contract provides, and the
> promise is made, and such refusal and promise are one transaction, the
> promise is without consideration, unless the refusal was induced by
> substantial and unforeseen difficulties in the performance, which would
> cast upon the party additional burdens not anticipated by the parties
> when the contract was made.

**Same.**

> *Held* that, where one party to a contract has by his acts so delayed the
> other party in the performance of his part of the contract that he is
> not legally bound to complete the contract within the stipulated time,
> and thereupon the former promises him extra pay if he will complete the
> contract within such time, and he so promises and performs, the promise
> of extra pay is supported by a valid consideration.

Appeal by defendant from an order of the district court for St.
Louis county, Ensign, J., overruling a demurrer to both causes of
action in the complaint.  Reversed as to the first cause of action.
Affirmed as to the second cause of action.

*Joseph B. Cotton* and *Geo. Welwood Murray,* for appellant.

Appellant was entitled to insist on respondent's performance of
the contract, and a promise to pay him additional compensation
for such performance is without consideration.  Ayers v. Chicago,

[1] Reported in 63 N. W. 1105.

R. I. & P. R. Co., 52 Iowa, 478, 3 N. W. 522; McCarty v. Hampton B. Assn., 61 Iowa, 287, 16 N. W. 114; Festerman v. Parker, 10 Ired. Law, 474; Hasbrouck v. Winkler, 48 N. J. Law, 431, 6 Atl. 22; Lingenfelder v. Wainwright B. Co., 103 Mo. 578, 15 S. W. 844; Conover v. Stillwell, 34 N. J. Law, 54; Reynolds v. Nugent, 25 Ind. 328; Vanderbilt v. Schreyer, 91 N. Y. 392; Pollock, Cont. 176 (161); Crosby v. Wood, 6 N. Y. 369; Deacon v. Gridley, 15 C. B. 295; 1 Parsons, Cont. 437; Bartlett v. Wyman, 14 Johns. 260; Harris v. Carter, 3 El. & Bl. 559; Stilk v. Myrick, 2 Camp. 317; Mallalieu v. Hodgson, 16 Q. B. 689; Smithett v. Blythe, 1 Barn. & Adol. 509; Lattimore v. Harsen, 14 Johns. 330; Robinson v. Jewett, 116 N. Y. 40, 22 N. E. 224. The same principle applies to both causes of action.

*J. L. Washburn* and *L. E. Judson, Jr.*, for respondent.

Where, owing to unexpected difficulties a contract becomes oppressive, the parties may substitute a new contract based on the equity and justice of the case; and in such case a promise of additional compensation is not invalid for want of consideration. Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442; Dillon, Mun. Corp. § 477 (398); Galveston v. Galveston C. R. Co., 46 Tex. 435; Bean v. Inhabitants of Jay, 23 Me. 117; Bishop, Cont. § 768; Lattimore v. Harsen, 14 Johns. 330; Hart v. Lauman, 29 Barb. 410; Keeney v. Mason, 49 Barb. 254; Meech v. City of Buffalo, 29 N. Y. 198; Stewart v. Keteltas, 36 N. Y. 388. The consideration for the substitution of a new contract is the abandonment, waiver or rescission of the old. Munroe v. Perkins, 9 Pick. 298; Rollins v. Marsh, 128 Mass. 116; Bryant v. Lord, 19 Minn. 312 (396); Coyner v. Lynde, 10 Ind. 282; Lawrence v. Davey, 28 Vt. 264; Cooke v. Murphy, 70 Ill. 96; Bishop v. Busse, 69 Ill. 403; Moore v. Detroit L. Works, 14 Mich. 266; Goebel v. Linn, 47 Mich. 489, 11 N. W. 284. The work having been performed under the new contract, and having been accepted by defendant, it is estopped to question the validity of the new contract. Maxwell v. Graves, 59 Iowa, 613, 13 N. W. 758; Keeney v. Mason, supra; Lawrence v. Davey, supra; Moore v. Detroit L. Works, supra; Rickey v. Morrison, 69 Mich. 139, 37 N. W. 56.

STAET, C. J.[2] This is an action brought by the plaintiff, as surviving partner of the firm of Wolf & King, to recover a balance claimed to be due for the construction of a portion of the defendant's line of railway. The complaint alleges two supposed causes of action, to each of which the defendant demurred on the ground that neither states facts constituting a cause of action. From an order overruling the demurrer the defendant appealed.

1. The complaint for a first cause of action alleges, among other things, substantially, that in January, 1893, the firm of Wolf & King entered into three written contracts with the president and representative of the defendant for the grading, clearing, grubbing, and construction of the roadbed of its railway for a certain stipulated price for each of the general items of work and labor to be performed; that the firm entered upon the performance of such contracts, but in the latter part of February, 1893, in the course of such performance, unforeseen difficulties of construction involving unexpected expenses, and such as were not anticipated by the parties to the contracts, were encountered. That the firm of Wolf & King found that by reason of such difficulties it would be impossible to complete the contracts within the time agreed upon without employing an additional and an unusual force of men and means, and at a loss of not less than $40,000 to them, and consequently they notified the representative of the defendant that they would be unable to go forward with the contracts, and unable to complete or prosecute the work. Thereupon such representative entered into an agreement with them modifying the written contracts, whereby he agreed that if they would "go forward and prosecute the said work of construction, and complete said contract," he would pay or cause to be paid to them an additional consideration therefor, up to the full extent of the cost of the work, so that they should not be compelled to do the work at a loss to themselves; that in consideration of such promise they agreed to forward the work rapidly, and force the same to completion, in the manner provided in the specifications for such work, and referred to in such contracts. That in reliance upon the agreement modifying the former

[2] Buck, J., took no part.

contracts, and in reliance upon such former contracts, they did prosecute and complete the work in accordance with the contracts as so modified by the oral agreement, to the satisfaction of all parties in interest. That such contracts and the oral contract modifying them were duly ratified by the defendant, and that the actual cost of such construction was not less than $30,000 in excess of the stipulated amount provided for in the original written contracts.

It is claimed by appellant that the complaint shows no consideration for the alleged promise to pay extra compensation for the work; that it is at best simply a promise to pay the contractors an additional compensation if they would do that which they were already legally bound to do. The general rule is that a promise of a party to a contract to do, or the doing of, that which he is already under a legal obligation to do by the terms of the contract is not a valid consideration to support the promise of the other party to pay an additional compensation for such performance. 1 Chitty, Cont. 60; Pollock, Cont. 176 (161); Leake, Cont. 621. In other words, a promise by one party to a subsisting contract to the opposite party to prevent a breach of the contract on his part is without consideration. The following cases sustain and illustrate the practical application of the rule. Ayers v. Chicago, R. I. & P. R. Co., 52 Iowa, 478, 3 N. W. 522; McCarty v. Hampton B. Ass'n, 61 Iowa, 287, 16 N. W. 114; Lingenfelder v. Wainwright B. Co., 103 Mo. 578, 15 S. W. 844; Vanderbilt v. Schreyer, 91 N. Y. 392; Reynolds v. Nugent, 25 Ind. 328; Robinson v. Jewett, 116 N. Y. 40, 22 N. E. 224; Wimer v. Worth Tp., 104 Pa. St. 317.

If the allegations of the complaint, when taken together, are in legal effect simply that the contractors, finding by the test of experience in the prosecution of the work that they had agreed to do that which involved a greater expenditure of money than they calculated upon, that they had made a losing contract, and thereupon notified the opposite party that they were unable to proceed with the work, and he promised them extra compensation if they would perform their contract, the case is within the rule stated, and the demurrer ought to have been sustained as to the first cause of action.

It is claimed, however, by the respondent, that such is not the proper construction of the complaint, and that its allegations bring

the case within the rule adopted in several states, and at least approved in our own, to the effect that if one party to a contract refuses to perform his part of it unless promised some further pay or benefit than the contract provides, and such promise is made by the other party, it is supported by a valid consideration, for the making of the new promise shows a rescission of the original contract and the substitution of another. In other words, that the party, by refusing to perform his contract, thereby subjects himself to an action for damages, and the opposite party has his election to bring an action for the recovery of such damages or to accede to the demands of his adversary and make the promise; and if he does so it is a relinquishment of the original contract and the substitution of a new one. Munroe v. Perkins, 9 Pick. 298; Bryant v. Lord, 19 Minn. 342 (396); Moore v. Detroit L. Works, 14 Mich. 266; Goebel v. Linn, 47 Mich. 489, 11 N. W. 284; Rogers v. Rogers, 139 Mass. 440, 1 N. E. 122.

The doctrine of these cases as it is frequently applied does not commend itself either to our judgment or our sense of justice, for where the refusal to perform and the promise to pay extra compensation for performance of the contract are one transaction, and there are no exceptional circumstances making it equitable that an increased compensation should be demanded and paid, no amount of astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. To hold, under such circumstances, that the party making the promise for extra compensation is presumed to have voluntarily elected to relinquish and abandon all of his rights under the original contract, and to substitute therefor the new or modified agreement, is to wholly disregard the natural inference to be drawn from the transaction, and invite parties to repudiate their contract obligations whenever they can gain thereby.

There can be no legal presumption that such a transaction is a voluntary rescission or modification of the original contract, for the natural inference to be drawn from it is otherwise in the absence of any equitable considerations justifying the demand for extra pay.

In such a case the obvious inference is that the party so refusing to perform his contract is seeking to take advantage of the necessities of the other party to force from him a promise to pay a further sum for that which he is already legally entitled to receive.    Surely it would be a travesty on justice to hold that the party so making the promise for extra pay was estopped from asserting that the promise was without consideration.    A party cannot lay the foundation of an estoppel by his own wrong.    If it be conceded that by the new promise the party obtains that which he could not compel, viz. a specific performance of the contract by the other party, still the fact remains that the one party has obtained thereby only that which he was legally entitled to receive, and the other party has done only that which he was legally bound to do.    How, then, can it be said that the legal rights or obligations of the party are changed by the new promise?    It is entirely competent for the parties to a contract to modify or to waive their rights under it, and ingraft new terms upon it, and in such a case the promise of one party is the consideration for that of the other; but where the promise to the one is simply a repetition of a subsisting legal promise there can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract.

But where the party refusing to complete his contract does so by reason of some unforeseen and substantial difficulties in the performance of the contract, which were not known or anticipated by the parties when the contract was entered into, and which cast upon him an additional burden not contemplated by the parties, and the opposite party promises him extra pay or benefits if he will complete his contract, and he so promises, the promise to pay is supported by a valid consideration.    In such a case the natural inference arising from the transaction, if unmodified by any equitable considerations, is rebutted, and the presumption arises that by the voluntary and mutual promises of the parties their respective rights and obligations under the original contract are waived, and those of the new or modified contract substituted for them.    Cases of this character form an exception to the general rule that a promise to do that which a party is already legally bound to do is not a sufficient consideration to support a promise

by the other party to the contract to give the former an additional compensation or benefit. 1 Whart. Cont. § 500.

On the other hand, where no unforeseen additional burdens have been cast upon a party refusing to perform his contract, which make his refusal to perform, unless promised further pay, equitable, and such refusal and promise of extra pay are all one transaction, the promise of further compensation is without consideration, and the case falls within the general rule, and the promise cannot be legally enforced, although the other party has completed his contract in reliance upon it. This proposition, in our opinion, is correct on principle and supported by the weight of authority.

What unforeseen difficulties and burdens will make a party's refusal to go forward with his contract equitable, so as to take the case out of the general rule and bring it within the exception, must depend upon the facts of each particular case. They must be substantial, unforeseen, and not within the contemplation of the parties when the contract was made. They need not be such as would legally justify the party in his refusal to perform his contract, unless promised extra pay, or to justify a court of equity in relieving him from the contract; for they are sufficient if they are of such a character as to render the party's demand for extra pay manifestly fair, so as to rebut all inference that he is seeking to be relieved from an unsatisfactory contract, or to take advantage of the necessities of the opposite party to coerce from him a promise for further compensation. Inadequacy of the contract price which is the result of an error of judgment, and not of some excusable mistake of fact, is not sufficient.

The cases of Meech v. City of Buffalo, 29 N. Y. 198, where the unforeseen difficulty in the execution of the contract was quicksand, in place of expected ordinary earth excavation, and Michaud v. MacGregor, supra, p. 198, 63 N. W. 479, where the unforeseen obstacles were rocks below the surface of the lots to be excavated, which did not naturally belong there, but were placed there by a third party, and of the existence of which both parties to the contract were ignorant when the contract was made, are illustrations of what unforeseen difficulties will take a case out of the general rule.

Do the allegations of fact contained in plaintiff's first alleged cause of action bring his case within the exception? Clearly not;

for eliminating all conclusions, and considering only the facts alleged, there is nothing to make the case exceptional, other than the general statement that the season was so extraordinary that in order to do the stipulated work it would require great and unusual expense, involving a large use of powder and extra time and labor for the purpose of blasting out the frozen earth and other material which was encountered. What the character of this material was we are not told, or what the other extraordinary conditions of the ground were. The court will take judicial knowledge of the fact that frozen ground on the Missabe Range, where the work was to be performed, in the month of February, is not unusual or extraordinary. It was a matter which must have been anticipated by the parties, and taken into consideration by them when this contract was made. The most that can be claimed from the allegations of the complaint is that the contractors had made a losing bargain, and refused to complete their contract, and the defendant, by its representative, promised them that if they would go forward and complete their contract it would pay them an additional compensation, so that the total compensation should be equal to the actual cost of the work.

2. The second cause of action is supported by a different and a valid consideration. It fairly appears from the allegations of the complaint as to this cause of action that the defendant, by changing its line and by its defaults, had so far delayed the work of construction as to legally excuse the contractors from their obligation to complete the work within the time originally agreed upon, and that to execute the work within such time would involve an additional expense. Thereupon, in consideration of their waiving the defaults and the delays occasioned by the defendant, and promising to complete the work in time, so that it could secure the bonds,[3] it promised to pay or give to them the extra compensation. This was a legal consideration for such promise, and the allegations of the second general subdivision of the complaint state a cause of action.

So much of the order appealed from as overruled the defendant's demurrer to the supposed first cause of action in the plain-

[3] See Grant v. Duluth, M. & N. Ry. Co., supra, pp. 396, 397.

tiff's complaint must be reversed, and as to so much of it as over-ruled the demurrer to the second cause of action it must be affirmed, and the case remanded to the district court of the county of St. Louis with the direction to modify the order appealed from so as to sustain the demurrer as to the first cause of action, with or without leave to the plaintiff to amend, as such court may deem. to be just.

So ordered.