[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos.  15-12195 & 15-12854
Non-Argument Calendar

_____

D.C. Docket No.3:14-cv-00145-HES-MCR

WOUNDED WARRIOR PROJECT, INC.,
a Virginia nonprofit corporation,

Plaintiff - Appellee,

versus

LOTSA HELPING HANDS, INC.,
a Delaware corporation,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(May 3, 2016)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges:

PER CURIAM:

Lotsa Helping Hands, Inc. ("LHH"), appeals the district court's grant of summary judgment in favor of Wounded Warrior Project, Inc. ("WWP"). WWP's initial complaint against LHH alleged a claim for breach of contract arising from LHH's refusal to return a $250,000 contractual payment. In the alternative, WWP's complaint asserted claims for promissory estoppel and failure to pay on an open account.[1]

We review de novo a district court's order granting summary judgment. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1309 (11th Cir. 2011). Summary judgment is appropriate when, viewing all of the evidence and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; *see also* Fed. R. Civ. P. 56(a). "A genuine factual dispute exists if a jury could return a verdict for the non-moving party." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (quotation omitted).

In June 2010, WWP hired LHH to create a web-based platform that could enable visitors to WWP's website to form private communities of individuals providing assistance to military veterans. The "My Care Crew," as it came to be called, was to focus on rallying individuals around one military veteran or family.

---

[1] LHH's notice of appeal also states that it intended to appeal the district court's order granting WWP's motion for costs. In its opening brief, however, LHH did not address the district court's order awarding costs, so it has abandoned the issue on appeal. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012).

2

In March 2011, LLH approached WWP with a project proposal to expand the "My Care Crew" web-based tool to create public communities that would be able to provide support for multiple military veterans and families, while expanding the reach of the program throughout the United States.

While talks and negotiations began in March 2011, the parties were not immediately able to finalize an agreement on the joint venture. In order that LHH could begin building the web-based tool without further delay, WWP and LHH executed a Memorandum of Understanding (the "MOU") on September 30, 2011. The MOU was meant to memorialize certain terms and conditions that would eventually be incorporated into the anticipated agreement (the "Agreement"). The MOU required WWP to pay LHH $250,000 "for LHH's provision of the [web-based tool]." The MOU cautioned that, "In the event the parties are unable to finalize an Agreement within the term specified . . . , LHH shall return to WPP any Payment made hereunder." Under the terms of the MOU, it was to expire when the Agreement was finalized but in no case later than 90 days after the execution of the MOU, or on December 29, 2011.

December 29, 2011, arrived and the parties had not yet finalized the Agreement. That same day, WWP and LHH mutually agreed, by email correspondence, to extend the term of the MOU to January 15, 2012.

When January 15, 2012 arrived, however, the parties were once again unable to finalize the Agreement by the deadline. Neither WWP nor LHH sought an extension or raised the issue of the expired deadline. Despite the lapse, negotiations continued past the January 15, 2012, deadline until June 15, 2012, when WWP sent a letter to LHH terminating the negotiations and demanding return of the $250,000 payment pursuant to the MOU. LHH refused to return the payment.[2]

The MOU stated, and the parties agree, that the governing law for claims initiated by WWP is the law of the Commonwealth of Massachusetts. Our review is therefore governed by Massachusetts state law.[3]

The plain contractual language of the MOU contemplates two outcomes: either (1) the parties reach an agreement within 90 days of the execution of the MOU and LHH keeps the $250,000 payment as consideration for producing the web-based tool, or (2) the parties fail to reach an agreement within 90 days, at which point LHH returns the $250,000 payment. Yet, notwithstanding the MOU's language, both WWP and LHH agree that the December 29, 2012, email correspondence memorialized a mutual agreement to extend the MOU's deadline until January 15, 2012. Under Massachusetts law, parties to a written contract may

---

[2] LHH did return $11,389.00 to WWP, which accounts for the district court's award of $238,611.00.

[3] Neither party alleges that the contract is a contract for the sale of goods subject to the UCC as adopted by Massachusetts.

4

modify that contract by written instrument, as WWP and LHH have done here. *See Schinkel v. Maxi-Holding, Inc.*, 565 N.E.2d 1219, 1223 (Mass. App. Ct. 1991) (explaining that "[t]here is authority for treating . . . a cover letter amendment, accepted by the other party, as effecting a modification of the written contract"). The parties' dispute centers on whether the parties' statements or actions after January 15, 2012 extended the deadline indefinitely, whether WWP waived the deadline and its right to recoup the payment, or whether WWP should be equitably estopped from relying on the January 15, 2012, deadline to recover payment.

In Massachusetts, the interpretation of a contract is a question of law for the court. *Eigerman v. Putnam Invs., Inc.*, 877 N.E.2d 1258, 1263 (Mass. 2007). A reviewing court construes the terms of a contract to give its plain language and terms their usual and ordinary meaning. *S. Union Co. v. Dep't of Pub. Utilities*, 941 N.E.2d 633, 640 (Mass. 2011).

It is, however, "a settled principle of law that '[t]he mode of performance required by a written contract may be varied by a subsequent oral agreement based upon a valid consideration.'" *Cambridgeport Sav. Bank v. Boersner*, 597 N.E.2d 1017, 1021 (Mass. 1992) (citation omitted). Such oral modifications "may be express or implied." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 9 (1st Cir. 2003) (citing *Rogers v. Rogers & Brother*, 1 N.E. 122, 122-23 (Mass. 1885)).

Typically, the question of whether the parties have agreed to modify a written contract is one of fact. *L.W. Severance & Sons, Inc. v. Angley*, 125 N.E.2d 415, 419 (Mass. 1955). But "[t]he evidence of a subsequent oral modification must be of sufficient force to overcome the presumption that the integrated and complete agreement . . . expresses the intent of the parties." *Boersner*, 597 N.E.2d at 1022. If such evidence is not offered, summary judgment is appropriate. *See D'Attanasio v. Marini*, 989 N.E.2d 934, 934 (Mass. App. Ct. 2013).

In the instant case, little evidence exists in the record that the parties explicitly agreed to extend the deadline indefinitely.[4] Instead, LHH relies primarily on WWP's implied acceptance of such a modification and points to two facts in support: (1) the continuation of negotiations after January 15, 2012, and (2) WWP's positive comments about LHH's work between January 15, 2012, and June 15, 2012, the date WWP sent notice of cancellation.

While this evidence establishes an ongoing relationship between the parties, "there is no evidence that [LHH] proposed, or the parties negotiated, new terms or

---

[4] Although LHH states that a question exists as to whether WWP explicitly agreed to extend the deadline indefinitely, the evidence LHH relies on for this contention does not support that position. LHH cites to the testimony of WWP's outside counsel, Anthony Scioli, where he stated that "to [his] knowledge" the extension "may have just been done verbally." LHH does not account for Scioli's later testimony where he stated that he was unaware of the December 29, 2012, emails extending the deadline to January 15, 2012. LHH then cites to WWP's CEO Steven Nardizzi's testimony for the proposition that there was no certain date by which the Agreement had to be finalized. But again, LHH's citation disregards Nardizzi's later testimony that he was unaware of the initial written extension. When contextualized, neither piece of testimony supports a finding that the deadline had been *explicitly* extended.

6

the details of a modified agreement, [or] . . . that [WWP] agreed to release" LHH from its duty under the MOU to return the payment. *Baynorth Realty Fund VI, LP v. Wickline*, 26 N.E.3d 752, *1 (Mass. App. Ct. 2015). While oral modifications may be implied, Massachusetts law requires that mutuality or acceptance of such modifications be "unequivocal." *Baynorth Realty Fund VI, LP v. Wickline*, 26 N.E.3d 752, *1 (Mass. App. Ct. 2015) (citing *First Pa. Mort. Trust v. Dorchester Sav. Bank*, 481 N.E.2d 1132, 1139 (Mass. 1985)). None of the statements or actions attributed to WWP or LHH, individually or taken together, represent an unequivocal showing of negotiation between the parties, a valid offer for and acceptance of an oral modification, or mutual agreement extending the deadline indefinitely.

Further, whether or not the continued negotiations and positive feedback are evidence of WWP's desire to modify the agreement, LHH does not state what consideration it gave WWP in exchange for agreeing to what would otherwise be an indefinite extension. *See D'Attanasio*, 989 N.E.2d at 934. Massachusetts law is clear that while an oral modification "may be express or implied[,] . . . [i]n either event . . . the modification must be supported by consideration." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 9 (1st Cir. 2003) (interpreting Massachusetts state law) (citing *Rogers v. Rogers & Brother*, 1 N.E. 122, 122-23 (Mass. 1885)).

7

LHH's argument that WWP waived its right under the MOU to receive repayment also suffers from both these critical defects.[5]  "Massachusetts common law defines waiver as the 'intentional relinquishment of a known right.'" *Dynamic Mach. Works, Inc. v. Mach. & Elec. Consultants, Inc.*, 831 N.E.2d 875, 879 (Mass. 2005) (citation omitted).  And it requires "[a] waiver implied by a person's conduct," such as that suggested here, to "be unequivocal . . . allow[ing] room for no other explanation of the conduct of the person who allegedly is waiving a contractual right."  *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 372 (D. Mass. 1991) (interpreting Massachusetts state law).  LHH does not point to any facts suggesting as much.  Nor does LHH identify what consideration it offered in return for WWP's waiver of rights.  *See Berenson v. French*, 159 N.E. 909, 911 (Mass. 1928) (identifying defendant's burden to prove "that the plaintiff had waived his right to demand and receive a release from the defendant and that the waiver was based on good consideration"); *Boston Helicopter Charter, Inc.*, 767 F. Supp. at 372.

Finally, LHH argues, in the alternative, that WWP should be equitably estopped from recovering the payment.  LHH alleges that it relied on (1) the

---

[5] WWP argues that LHH is precluded from raising the issue of waiver on appeal because it did not raise it before the district court.  Although LHH did not sufficiently brief its waiver position before the district court, referencing waiver only in its "Relevant Factual Background" section and only once, it appears that the district court may have understood and considered LHH's waiver argument.

continued negotiations and (2) the lack of a firm deadline to "continue[] to develop and test the project for five (5) months after January 15, 2012."

Under Massachusetts law, "[t]o establish estoppel, a party must show (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Licata v. GGNSC Malden Dexter LLC*, 2 N.E.3d 840, 848 (Mass. 2014). "All of the elements of estoppel must be present and the party asserting the estoppel theory has a heavy burden to prove that all three elements are present." *Clickner v. Lowell*, 663 N.E.2d 852 (Mass. 1996) (alteration and citation omitted).

Despite LHH's argument that "the essence of the [equitable estoppel] argument is contained in [its] response," LHH discernibly raises this argument for the first time on appeal. While LHH's equitable estoppel argument fails for that reason alone, *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012), its argument fails on the merits as well. To begin with, LHH does not point to "a representation" WWP made with the *intent* that it cause LHH to rely on that representation. Nor does LHH state how its reliance on continued negotiations and positive feedback was reasonable in light of LHH's knowledge of the lapsed deadline and the repayment requirement it triggered, the parties' initial two-week

9

extension suggesting a desire to expediently finalize the Agreement, and the term making the $250,000 payment contingent on reaching a final Agreement.

Further, although LHH argues before the Court that it worked for 5 months after the January 15, 2012, deadline, the evidence of detriment in the record is not so clear. For example, LHH states that "[b]y June 15, 2012, LHH had spent more than 300 hours over a time period of approximately 9 months finalizing the business opportunity" and that "[o]ver the same period of time, LHH's legal counsel had also expended countless hours to finalize the definitive agreement." But LHH does not specify what portion of that time and effort, and thus what detriment, is attributable to WWP's alleged inducement after the January 15, 2012, deadline. LHH assumed the risk that if the Agreement was not finalized by the deadline it ultimately might not be compensated for work done during the negotiation period. LHH could have easily put forth evidence, such as its employees' timesheets or its attorney's billing statements, that might have clarified the harm caused by WWP's alleged inducement after the deadline lapsed. It did not. Generally, "the law does not regard estoppels with favor, and estoppel is applied only to avoid injustice." *Barrow v. Dartmouth House Nursing Home, Inc.*, 14 N.E.3d 318, 324 (Mass. App. Ct. 2014) (alteration and citations omitted). We cannot say that inequity would result by requiring LHH to abide by the plain terms

10

of the MOU where it has failed to meet even one of the three required prongs proving equitable estoppel.

Accordingly, we affirm the district court's orders dated April 16, 2015, and June 11, 2015, granting summary judgement and attorney's fees and costs in favor of WWP.

**AFFIRMED.**