FREDERICK STORCK, *et al.*, Respondents, v. BENJAMIN T. MESKER, *et al.*, Appellants.

St. Louis Court of Appeals, November 7, 1893.

1. **Practice Appellate:** WAIVER OF DEMURRER TO EVIDENCE. An instruction of non-suit was offered and refused at the close of the plaintiff's evidence, and thereon renewed at the close of the case. *Held* that, in the review of these rulings, the entire evidence should be considered.

2. **Contracts:** CONSIDERATION. A contractor for the erection of a building sub-let a portion of his contract, which the sub-contractor failed to execute in accordance with its provisions. Thereon it was agreed between the contractor and sub-contractor that the work should be repaired at their joint expense, so as to make it answer the requirements of the contract in respect to the deficiencies then known to the contractor. After the repairs had been partly proceeded with, the contractor ascertained that the work was deficient in other respects, and refused to carry out this agreement. *Held* that this agreement for repairs at joint expense was without consideration, and, notwithstanding its partial performance, was not obligatory on the contractor.

3. ———: EVIDENCE OF DAMAGES FOR BREACH. When a contractor sublets a part of his contract, and the sub-contractor fails to perform his part of the work in conformity with the contract, the former cannot establish the quantum of his damages against the latter, nor his right to substantial damages, by proof that he had agreed upon their amount with the person with whom he had contracted, and thereon paid it.

4. ————: EXTRINSIC EVIDENCE OF CUSTOM. Extrinsic evidence is admissible in the construction of a building contract to show that a term in it, such as a requirement for "old style roofing tin," had by the usage of trade acquired a peculiar signification.

5. ————: ORAL EVIDENCE IN VARIANCE OF ITS TERMS. But evidence of a contemporaneous oral agreement between the parties to the contract, inconsistent with a technical term used in it, is not competent.

6. Instructions: MEASURE OF DAMAGES. NON-DIRECTION. While it is the better practice to instruct the jury as to the measure of the damages, the failure of the court to do so amounts only to non-direction, and therefore is not ground for the reversal of the judgment.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Nathan Frank* and *Chas. W. Bates,* for appellants.

(1) The practical interpretation of an ambiguous written contract may be shown by parol evidence of the acts of the parties, and should control. *St. Louis Gaslight Co. v. City of St. Louis,* 46 Mo., 121, 128; *Matthews v. Danahy,* 26 Mo. App., 660; *Deutmann v. Kilpatrick,* 46 Mo. 624; *Sedalia Brewing Co. v. Sedalia Water Works,* 34 Mo. App. 49; *Jones on Construction of Contracts,* sec. 95, and cases cited. Parol evidence is admissible of the circumstances surrounding the execution of an ambiguous written contract and its subject-matter; the relation of the parties and their conversations in reference thereto before, at and about the time of its execution. *Black River Lumber Co. v. Warner,* 93 Mo. 374: *Reisenleiter v. Lutherische Kirche,* 29 Mo. App. 291; *Thorington v. Smith,* 8 Wall. 1; *Quarry Co. v. Clements,* 38 Ohio St. 587; *Galen v. Brown,* 22 N. Y. 37; *Birch v. Depeyster,* 1 Stark, 210; 4 Camp. 385; *Sweet v. Shumway,* 102 Mass. 365; Browne on Parol Evidence, sec. 54, pp. 190, 191; *Haddock v. Woods,* 48

Iowa, 433; *Quigley v. De Haas*, 98 Pa. St. 292. (2) The compromise of a disputed claim for unliquidated damages and a threatened lawsuit is a complete bar to an action on the original claim, so long as the defendant is in good faith performing the compromise, and is ready and willing to perform the same according to its terms. *Hunt v. Hvnter*, 52 Mo. App. 263; *Maack v. Schneider*, 51 Mo. App. 92, 102; *Perkins v. Headley*, 49 Mo. App. 556; *Fuller v. Kemp*, 33 N. E. Rep. 1034; *Deutmann v. Kilpatrick*, 46 Mo. App. 624: *Adams v. Helm*, 55 Mo. 468; *Dunham v. Griswold*, 100 N. Y. 224; *Mitchell v. Henley*, 110 Mo. 598; *Green v. Railroad*, 82 Mo. 653; *Black River Lumber Co. v. Warner*, 93 Mo. 374; *Smith v. Coal Co.*, 36 Mo. App. 567; *Tureman v. Stephens*, 83 Mo. 218; *Imboden v. Ins. Co.*, 31 Mo. App. 321. (3) Defendant's demurrer to the evidence should have been sustained. *Whitascheck v. Glass*, 46 Mo. App. 209; *Kingsland, etc., Co. v. Iron Co.*, 29 Mo. App. 526; *Martinowsky v. City of Hannibal*, 35 Mo. App. 70.

*Kehr & Tittman*, for respondents.

(1) There is no ambiguity, either patent or latent, in the written contract, and parol evidence to vary or contradict the same is inadmissible. (2) Neither the promise to do a thing nor the actual doing of it will be a good consideration, if it is a thing which the party is already bound to do, either by the general law or by a subsisting contract. *Lingenfelder v. Wainright, etc., Co.*, 103 Mo. 578, and authorities there cited in brief on page 587 and by the court on page 593. (3) The contract and its breach being shown, plaintiff was entitled to recover and defendant's instruction was properly refused. (4) In civil cases the court is not required to give instructions, where none are asked. *Dempsey v. Reinselder*, 22 Mo. App. 43-45; *Tetherow v. Railroad*,

98 Mo. 74-86; *Drury v. White*, 10 Mo. 354; *Simonds v. Oliver*, 23 Mo. 32; *Harrington v. Minor*, 80 Mo. 270.

BIGGS, J.—The plaintiffs were contractors for the building of the Abbey New Engelberg in Nodaway county.. The building was to be constructed under written specifications. For the tin and galvanized iron work the specifications provided as follows: "All the roofs, excepting spire, to be covered with *old style roofing tin, very best quality*, with standing seams, and well painted on the inner side before laid. The two spires to be covered as the rest of the roof. The cupola to be covered with ornamented galvanized shingles. The gutters and valleys to be lined with the best valley tin, and to run under the roof at least six inches. The conductors to be of the best, No. 26, Juniata galvanized iron. All angles and all other necessary places to be covered with best tin, as above, all well soldered and rosined, and made perfectly water-tight, and put up as indicated on plans, or as may be directed, with all necessary curves, breaks and bends, etc., to carry the water from the several roofs to within one foot of the ground. The conductors to be four inches from the upper roof and six inches from the lower roof, and thoroughly secured with iron hooks; all necessary places to be flush, whether specified or not, and made water-tight. All leaks to be stopped after other craftsmen, and *all left perfectly water-tight upon the completion of the building.* All galvanized iron cornices to be as per drawings and details, and of the best, No. 26, Juniata galvanized iron. All work done and all material furnished must be of sufficient quality and quantity for its various uses, so as to fully carry out the evident intent of the design, and anything omitted in either plans or specifications, necessary to complete the job, must be done by the con-

tractor or contractors notwithstanding such omissions. The entire work must be constructed and finished in every part in a good, substantial and workmanlike manner, according to the accompanying drawings and the specifications to the full extent and meaning of the same, and to entire satisfaction, approval and written acceptance of the architect and the owner.''

On the eighth day of July, 1889, the defendants, who reside in St. Louis, agreed and contracted with the plaintiffs in consideration of the sum of $1984 to furnish the materials and construct all the items of work above specially set out, the materials and work to be of the quality and kind required by the aforesaid specifications. The work was completed and paid for in the fall of 1889.

For a cause of action the plaintiffs allege in substance that the defendants, in constructing the roof, did not use *"old style roofing tin of the best quality,"* but used other greatly and inferior tin in the roof, and that, by reason of the careless and unskillful manner in which the tin was put on, the roof was never water-tight, but always leaked, and was never fit for the purposes for which it was intended. It was also averred that the defendants did not cover either of the two spires with ''old style roofing tin of the very best quality,'' but that they covered them with an inferior and cheaper brand of tin; that the work thereon was not done in a workmanlike manner, but was carelessly and negligently done. The same averments were made as to the materials used and the work done in the construction of the angles, and it was alleged that by reason of all of this the roof was never water-tight, but continued from the fall of 1889 to the summer of 1892 to leak, when it became necessary to remove it and to put a new one on; and that, in doing this, the plaintiffs expended the sum of $1500.

It was conceded by the defendants that the roof was not put on in a good workmanlike manner, that it was not water tight, and that it continued to leak until the summer of 1892. As a defense or rather as a bar to the action it was alleged in the answer, and sought to be established on the trial, that, after the defendants had been notified of the defective condition of the roof, the plaintiffs' claim against them growing out of the construction of the roof was compromised, wherein it was agreed that the plaintiffs and defendants would repair the roof, each party paying one-half of the cost; that in pursuance of this agreement they proceeded to repair the roof, but, before the repairs were completed, the plaintiffs withdrew from the arrangement and notified the defendants to put on an entirely new roof, or that plaintiffs would do so at the expense of the defendants.

The reply was a denial of the new matter contained in the answer.

There was a verdict and judgment for the plaintiffs for one thousand dolllars. From this judgment the defendants have appealed, and they urge that under the law and the evidence the plaintiffs were not entitled to a judgment, and that the court erred in rejecting competent and relevant testimony offered by them.

At the close of the plaintiffs' evidence in chief the defendants asked the court to declare as a matter of law that the plaintiffs could not recover. This the court refused to do. At the close of all the evidence the instruction was renewed, and the court again refused it.

The defendants, by introducing evidence, waived the demurrer to the plaintiffs' evidence to the extent of assuming the risk of supplying by their own evidence the defects, if any, in the plaintiffs' case. *Eswin v.*

*Railroad*, 96 Mo. 290; *Weber v. Railroad*, 100 Mo. 195. Therefore, this assignment of error must be determined by examining *all* the evidence.

The argument of the defendants' counsel in support of this assignment is based on the proposition that the alleged compromise agreement discharged the defendants from liability on the original contract.

It is undisputed that the roof was not constructed of what is known to the trade as "old style roofing tin;" that the roof was badly put on, and that it continued to leak until the summer of 1892, notwithstanding the attempts by plaintiffs and defendants to repair it. After one or two interviews between the parties and the church authorities, who were demanding that the roof be taken off and replaced by another, and who were threatening to sue the plaintiffs if this was not done, the following correspondence was had between the plaintiffs and the defendants:

"St. Louis, Mo., May 18, 1892.
"*Messrs. Storck & Brinks, Twelfth and State streets, Quincy, Ill.*

"Gentlemen: We were sorry we could not see you again while you were down here. While we have always expressed our willingness to do all we possibly could to make the roof right, which we now again confirm, but after we once get it tight we would not be responsible for it. Since thinking over the matter seriously, we do not think it proper to take off the present tin roof and relay it. We are satisfied in our own minds that we can make it perfectly tight, notwithstanding the trouble and expense we have been to, without taking the present tin roof off and relaying it. We also wish to state that it will cost us a great deal more to put on a tin shingle roof, as you suggest, we to furnish a first-class tinner and you to do the same, and both to put on and finish the roof together, and the church to

furnish all the material; while we do not wish to be arbitrary and want the good will of you all, and notwithstanding it will cost us considerable more money, we will agree to do so, namely, you to furnish, as well as ourselves, a first-class tinner apiece, and they to put on the tin shingle roof and complete it together, and we to receive the old tin, and you or the church to release us from any damage done now and hereafter caused from the leaky roof.

"If this is satisfactory please advise us, and we will send a first-class man at any time you may say.

"Trusting that our relations may continue to be of the very pleasantest, and that you will favor us with any future orders, we remain,

"Yours respectfully,
"MESKER & BRO."

"QUINCY, ILL., May 25, 1892.
"*Messrs. Mesker & Bro., St. Louis, Mo.*

"GENTS: We received your letter, you stating you will make a tight roof on the church in Conception. We got a letter from Father Placitus, which I will lay by. The best will be to give satisfaction, take the tin off and replace it and throw out the bad tin, and, if you will do that, we will stand half of the expense; you to send a first-class tinner, and we will send a first-class tinner, you to furnish the tin and we will pay for half the tin, and we will have a tight roof. Please answer at once and show your good will, and we will try to give you new orders.

"Respectfully yours,
"STORCK & BRINKS."

"ST. LOUIS, Mo., June 1, 1892.
"*Messrs. Storck & Brinks, Quincy, Ill.*

"GENTLEMEN: We should have answered your letter long before this; the writer has been out of the

city and just returned this morning. In answer to yours of the 25th ult. is at hand, and is perfectly satisfactory to us with one exception, that we do not think it necessary to take off all the tin and relay it, but wherever there is a bad seam, and, in the judgment of the mechanic, should be taken out, he shall do so. As we stated before, the roof can be made tight without taking up the entire tin and relaying it. And if this can be done, we do not see why you and ourselves should be compelled to throw money away in that manner; and the number of rolls taken up must be left with the mechanics that are sent up, as they are the ones that certainly should know how many are to be taken up, and this must be left in their hands, and no one else, outside of them, should determine how many rolls of tin shall be taken up. Under those conditions we will proceed at once to send a first-class man, and you do the same; also, as stated in yours of 25th ult., you stand half the expense and we the other half. If this is satisfactory, let us know at once when to send our man.                    Respectfully yours,

"MESKER & BRO."

"QUINCY, ILL., July 12, 1892.
"*Messrs. Mesker & Bro., St. Louis, Mo.*

"GENTLEMEN:—In a week or ten days we will be ready for going to Conception to make the church roof tight; and as you always said you would be ready any time, so we trust you will not make any delay on the work from your side. We hope you also will have the necessary tin ready for it. Please send two pair of tongs along, as the man we engaged has got none. I will write a few days before the date we wish to be at Conception, and I will go there myself and help get the work started, and I hope we will give satisfaction. Please answer as soon as you will be ready.

"Respectfully yours,

"STORCK & BRINKS."

As a result of this correspondence each party furnished a tinner to make repairs on the roof. The mechanics proceeded with the work for several weeks, and before its completion Father Placitus, the representative of the church, ordered the work stopped and demanded of the plaintiffs that the old roof be taken off and replaced with a new one, because it was ascertained that that portion of the roof, which had been repaired, leaked in several places, and also for the reason that the tin used was not "old style roofing tin" as required by the specifications, but was of a different and inferior quality of tin. Thereupon, the plaintiffs notified the defendants of the demands of Father Placitus, and required of them the construction of a new roof in accordance with the specifications. The defendants having failed within a reasonable time to accede to the demand, the old roof was removed, and a new one substituted.

The letters show an agreement to repair the roof at the joint expense of the parties; but there is no evidence of a consideration for the agreement, as the defendants were already bound by the terms of their contract to do what the letters contemplated should be done. *Lingenfelder v. Wainright Brewing Co.*, 103 Mo. 578. The letters merely contemplated the carrying out of the defendants' original contract. Neither did a part performance of the agreement furnish a consideration for it, nor estop the plaintiffs from denying its binding force as against them. The defendants represented that they could repair the roof so as to make it water tight, in which they failed, as the uncontradicted evidence shows. This was the inducement to the plaintiffs to enter into the contract. Besides it appears from the plaintiffs' evidence, which is in no way contradicted, that, after the repairs were commenced, they learned for the first time that the roof was not constructed of "old style roofing tin," which fact entitled the repre-

sentatives of the church to reject the roof altogether as they had never finally accepted it; *Mohney v. Reed*, 40 Mo. App. 99; *Haysler v. Owen*, 61 Mo. 273; *Eyerman v. Cemetery Ass'n*, 61 Mo. 490; *Yeats v. Ballentine*, 56 Mo. 530; *Halpin v. Manney*, 33 Mo. App. 388. For these reasons we think that the alleged compromise agreement was without consideration, and therefore was not binding on the plaintiffs.

It is next insisted that the evidence was not sufficient to warrant the recovery of substantial damages.

When the defendants failed to remove the old tin roof, Father Placitus, by and with the consent of the plaintiffs, determined to replace it with a tin shingle roof, which the evidence shows was much more expensive then the one provided for in the specifications. Thereupon, in settlement of the claim of the church against the plaintiffs, the latter agreed to and did pay to Father Placitus the sum of $1,500.00 towards the construction of the new roof. It was incumbent on the plaintiffs, in order to recover substantial damages, to go further than this and introduce some evidence tending to show the reasonable cost of a roof constructed in accordance with the specifications. The mere fact, that they paid the church $1,500.00 towards the construction of an entirely different kind of roof, proved nothing. It did not furnish any basis for the measurement of the damages of the plaintiffs. However, this insufficiency in the plaintiffs' evidence was remedied by that introduced by the defendants. One of the defendants tesitfied that a new roof, constructed of " old style roofing tin," would have cost between $950.00 and $1,300.00, according to the brand of " old style tin " used. The recovery being for $1,000.00 was within the limits of this evidence. We must, therefore, hold that there is no merit in this assignment of error.

It appeared upon the trial that the term "old style roofing tin" referred to certain brands of tin which were manufactured in a certain way, and that the meaning of the phrase was so understood by "the trade." It was competent to show this by parol evidence; this in no way tended to vary the contract, but only to explain it. But it was not competent for the defendants to prove, as offered, that it was understood at the time they made their bid that they could use other tin than "old style roofing tin of the best quality," as understood by dealers in tin. Such evidence would clearly have tended to vary the contract. The refusal of the court to admit this testimony constitutes the third assignment of error.

The admissibility of oral evidence to explain the meaning of technical terms in mercantile contracts is well supported by the decisions and the text-books. Browne on Parol Evidence thus states the rule: "Extrinsic evidence is admissible in the construction of a mercantile contract to show that phrases or terms used in the contract have acquired by the custom of the locality, or by the usage of trade, a peculiar signification, not attaching to them in their ordinary use, and this whether the phrases or terms are, in themselves, apparently ambiguous or not." (Browne on Parol Evidence, sec. 57, p. 202.) And the same author says that such evidence has no tendency whatever to change or vary the contract.

This rule has been applied in this state in the case of *Soutier v. Kellerman*, 18 Mo. 509. There the contract called for the delivery of four thousand shingles. The defendant delivered eight bundles containing by actual account two thousand and five hundred shingles. The defendants' evidence tended to show that, by the custom of the lumber trade, the eight packs of shingles were properly reckoned as four thousand shingles.

Touching this defense the court said:  "The usage of a particular trade is evidence from which the intention and agreement of the parties may be implied; and, although it cannot control an express contract, made in such terms as to be entirely inconsistent with it, yet, in express contracts, the terms employed have their true meaning and force best understood by reference to such usage.  Evidence of such usage is admitted, not to vary the terms of an express contract· or to change its obligation, but to determine the meaning and obligation of the contract as made."

The offer of the defendants to prove that, at the time they made their bid, it was orally agreed that they could use in the construction of the roof a brand of tin, not known as "old style roofing tin," was clearly outside of the rule as stated by the supreme court, since it is clear that such evidence would have been inconsistent with the terms of the written contract, in that it would have varied the obligation of the defendants under it.  Hence, the court did right in excluding the evidence.

The failure of the court to instruct the jury as to the measure of damages presents a case of non-direction merely, which is not reversible error.  It is the better practice to instruct the jury on the subject, as the measure of damages is always a question of law.  But, when the court fails to do so, causes cannot be reversed for this reason alone.

Finding no error in the record that would justify the reversal of the judgment, it will be affirmed.  All the judges concur.