# C. W. ZIMMERMAN v. COUNTY OF RICE.[1]

January 28, 1938.

No. 31,454.

*Daggett & Redlund,* for appellant.
*Thomas H. Quinn,* for respondent.

[1]Reported in 277 N. W. 360.

HILTON, JUSTICE.

O. F. Zimmerman & Son, of Faribault, Minnesota, being the lowest bidder, secured from the defendant a contract for the construction of the exterior superstructure of a new courthouse at Faribault. The senior Zimmerman having died, C. W. Zimmerman, the son and surviving partner, succeeded to the contract and completed the work. The defendant paid the specified contract price of $66,143. Plaintiff brought this action to recover an additional $6,200.93, claiming that he was entitled thereto because of additional expense in completing the work. The case was tried to the court without a jury and resulted in findings of fact and conclusions of law for the defendant. Plaintiff moved for amended findings and conclusions of law or for a new trial. The court amended one finding and denied the motion in all other respects. This appeal by plaintiff followed.

Plaintiff's original bid provided for the use of Carthage or Bedford stone, but before the contract was entered into, and because of local interest, it was mutually agreed between plaintiff and the county board that Faribault stone should be used exclusively, and the building contract so provided. The language therein used was as follows:

"Contractor further agrees to use Faribault Marble Trim stone for the exterior wherever Bedford and Carthage stone is specified on the original drawings. It is understood between both parties that the sub-contractor for this stone [Lieb and Company] shall furnish this contractor with a surety bond as a safeguard to both parties."

Prior to the time the change to Faribault stone was agreed upon, there was considerable doubt as to the ability of Lieb and Company to furnish the stone, and also as to the suitability of the stone for the requirements of the superstructure. This was the reason for the contract provision requiring Lieb and Company to furnish the bond to plaintiff. It did not have sufficient finances or equipment to turn out stone properly fabricated for plaintiff's uses in performing the contract. Lieb and Company seemingly

overcame these problems by securing financial backing from a local bank and inducing a St. Paul firm to agree to fabricate and prepare the stone for plaintiff's use.

Apparently the fears of everyone as to the ability of Lieb and Company to perform its agreement to furnish suitably prepared stone were well founded. From the inception of the work difficulties were encountered by it, causing plaintiff the additional delay and expense for which he seeks to recover in this action. Many factors contributed to the default of Lieb and Company. The bank which had agreed to back it closed and left it without the necessary finances with which to complete the contract. The stone itself was not well suited to the specified requirements, and the wastage ran very high, with such resulting delay and expense that the St. Paul firm refused to complete the fabrication of the necessary stone. Plaintiff, largely through his own efforts, finally made arrangements to overcome all these difficulties, and the work was completed.

Lieb and Company did not furnish the bond required by the hereinbefore quoted provision of the contract. The trial court found that the giving of the bond was waived by the plaintiff. This finding is attacked. It is difficult to see how, under the circumstances, the failure of Lieb and Company to give the specified bond could affect defendant's liability in this action. It was not to be a party to the bond, and the language of this provision cannot be construed as an agreement on the part of the county board to secure such a bond. The county was fully protected by a bond given to it by the plaintiff. There was no necessity of its requiring other or further protection. The failure of Lieb and Company to give the bond might enable the plaintiff to avoid the contract without breach, but would not impose any liability on the defendant, which had no duty to procure the same. In any event, the evidence amply supports the finding of the trier of fact that plaintiff waived the giving of the bond. The witness Lieb testified that there was an express waiver thereof by the plaintiff at a meeting of the county board, and gave the circumstances which occurred at the time. Plaintiff testified to the contrary. The fact remains, however, that he en-

tered into the performance of his contract with full knowledge that the bond had not been given and without requiring the same. He subsequently completed the work. These circumstances are sufficient to sustain the finding of waiver.

The plaintiff claims that the board promised that it "would stand behind him and see that he was paid for any additional expense that he might be put to by reason of using said Faribault marble." This promise was allegedly made after the difficulties stated arose. There is considerable evidence corroborating this claim. In that regard the trial court stated: "This promise, if made at all, was not made at any regular or special meeting of the county board. There is no record of such action. The best that can be said of it is that, if made at all, it was made by two or three members of the board in conversation with plaintiff."

Even assuming, however, that the county could be bound by a promise of additional compensation made under the circumstances here, it does not follow that such a result is to be reached in this case. The rule in this state, and generally elsewhere, is that a promise to pay one additional compensation to do what he is already under contract to do is without consideration and not binding. King v. D. M. & N. Ry. Co. 61 Minn. 482, 63 N. W. 1105; Hilde v. International Harv. Co. 166 Minn. 259, 207 N. W. 617; 14 Minn. L. Rev. 414; 15 Minn. L. Rev. 710; 13 C. J. 351; note, 25 A. L. R. 1450.

It is claimed that the instant case is within an exception to the rule, recognized by this court in King v. D. M. & N. Ry. Co. *supra,* *viz.,* where the party has refused to complete his contract because of unforeseen and substantial difficulties in the performance of the contract which were not known or anticipated by the parties when the contract was entered into, and there is a promise of extra compensation for the completion of the contract. In such cases the latter promise is supported by a valid consideration and is enforceable. Careful examination of the record discloses that plaintiff is not entitled to the benefit of this exception, because the difficulties subsequently encountered were foreseen before the contract was made. Plaintiff himself testified that he entered into the con-

tract reluctantly because of such difficulties. He stated that he foresaw or feared that which afterward really did happen, *viz.*, the failure of Lieb and Company to furnish the stone as required. As a matter of fact, he not only foresaw this difficulty, but also anticipated the very causes of it. He knew Lieb and Company was in straitened financial condition and might encounter difficulties because of that fact. He also expected trouble in securing the stone and was doubtful of its suitability for his needs from the outset. Much to his disadvantage, future events placed the stamp of reality on these fears.

Nowhere in the record does it appear that plaintiff refused to go ahead with the contract. He talked it over with such members of the board as were available and proceeded to make other arrangements to overcome the difficulties which had arisen. There is nothing to indicate or suggest any intention of his to abandon the contract at any time. The surrender of any claimed right to do so and thus breach his contract was not bargained for at the time the alleged new promise was made. After the latter, plaintiff did only what he was already bound to do under the contract, and the defendant received nothing it was not entitled to. The alleged agreement for additional compensation is within the rule stated, and no recovery based thereon can be had. In view of plaintiff's evident good faith throughout the performance of his contract, it is unfortunate that he must sustain a loss therefrom, but he would have been afforded ample protection by the bond from Lieb and Company had he chosen to insist upon receiving it.

Affirmed.