PHILIP SWARTZ & another *vs.* SAMUEL LIEBERMAN.

Suffolk.    May 6, 1948. — June 11, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, SPALDING, & WILLIAMS, JJ.

*Contract,* Consideration, Performance and breach.

On evidence, at the hearing of an action upon a contract by the plaintiff to manufacture and deliver a specified number of display stands to the defendant at a specified price, that deliveries were made by instalments, that from time to time the plaintiff had stated to the defendant that owing to the increased cost of materials, labor and finishing, he "would have" to charge more than the price set by the original contract, that on each such occasion the defendant had agreed to pay the increase then asked and finally had purported to terminate the contract and had sought settlement on the basis of the original price, findings were warranted that the defendant on each occasion promised to pay the increase in order to secure performance by the plaintiff, that there was a new consideration for each new promise, and that the plaintiff was entitled to recover on the basis of such increases.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 17, 1947.

The case was heard by *Brackett,* J.

In this court the case was submitted on briefs.

*J. C. Johnston & M. E. Schneider,* for the defendant.

*P. J. Feinberg,* for the plaintiffs.

WILLIAMS, J. In this action of contract, brought in the Municipal Court of the City of Boston, there was a finding for the plaintiffs, a report to the Appellate Division of issues raised by the denial of requests for rulings filed by the defendant, an order by the Appellate Division that the report be dismissed, and an appeal by the defendant from that order to this court.

From the findings of fact by the judge it appears that on or about April 25, 1946, the defendant submitted to the plaintiffs a written order for four thousand wooden display stands to be manufactured in accordance with samples at a price of sixty-five cents each. In negotiating as to price the defendant said, "You take a trial order of five hundred stands and see how you make out." The plaintiffs said they would fill this and make the whole amount ordered, but, if they could not, they would have to go back to the seventy-five cents price. The defendant advised the plaintiffs that he required the stands in connection with pending orders in his business at as early a date as possible. It was agreed that the defendant would advance the money for the necessary lumber and in way of repayment for such advance be entitled to deduct ten cents from the price of each stand. The defendant supplied lumber sufficient to manufacture two thousand eight hundred sixty-eight stands. Five hundred stands were delivered and paid for by the early part of July at the rate of sixty-five cents per stand less the agreed ten cents.

In September the plaintiffs notified the defendant that owing to the increased cost of materials, labor and finishing the plaintiffs would have to charge seventy-five cents for each stand instead of sixty-five cents. The defendant agreed to pay at the increased rate. In October the plaintiffs delivered five hundred stands at the price of seventy-five cents

per stand and were paid for them by the defendant. Early in December the plaintiffs made a representation to the defendant similar to that of September, stating that they would have to charge eighty-five cents per stand. The defendant again agreed to pay. Deliveries were made by the plaintiffs, two hundred fifty stands on December 21, two hundred fifty on January 9 and five hundred on March 10, the charge at the rate of eighty-five cents per stand being $750. On January 3, 1947, the defendant paid $187.50 and on January 20 $187.50, leaving an unpaid balance due on the charge for the last three deliveries of $375. On March 21 the defendant sent a check for $25 accompanied by a letter cancelling the balance of the four thousand order. The check for $25 was intended by the defendant to complete the payment for the two thousand stands delivered at a price of sixty-five cents per stand for the whole two thousand stands.

Between March 10, the date of the last delivery, and the receipt of the defendant's letter of March 21, the plaintiffs had completed, except for painting, the manufacture of eight hundred sixty-eight stands. With a deduction of twenty-five cents per stand for the painting the plaintiffs' charge for the work on these stands was $434.

The judge found for the plaintiffs in the amount of $809, this sum comprising $375 due on the 1947 deliveries and $434 for the work and labor on the undelivered eight hundred sixty-eight stands. He made specific findings that, "due to the special make, style and use of said display stands, the eight hundred sixty-eight [stands] which the defendant refused to accept are of no value to the plaintiffs and cannot be sold elsewhere, [and] that the plaintiffs' charge for the work done on these stands prior to the date of the attempted . . . cancellation of the contract was $434 . . . [which was] fair and reasonable."

No question of pleading appears to have been raised at the trial or is reported for our consideration. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384, 385.

The defendant filed six requests for rulings. The first five involved the sufficiency of the deliveries actually made

and because of the findings of fact made by the judge have become immaterial.

The sixth request raises the question whether the later promises of the defendant to pay in excess of sixty-five cents per stand were without consideration and therefore not binding on the defendant.

"As a general proposition, it is settled in this Commonwealth that a promise to pay one for doing that which he was under a prior legal duty to do is not binding for want of a valid consideration." *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 194. In his opinion in that case Knowlton, C.J., said, "A limitation of the general proposition has been established in Massachusetts, in cases where a plaintiff, having entered into a contract with the defendant to do certain work, refuses to proceed with it, and the defendant, in order to secure to himself the actual performance of the work in place of a right to collect damages from the plaintiff, promises to pay him an additional sum. This limitation is not intended to affect the rule that a contract cannot be binding without a consideration; but it rests upon the doctrine that, under these circumstances, there is a new consideration for the promise. . . . In such a case the new promise is given to secure the performance, in place of an action for damages for not performing" (pages 194–195). See *Munroe* v. *Perkins*, 9 Pick. 298; *Holmes* v. *Doane*, 9 Cush. 135; *Peck* v. *Requa*, 13 Gray, 407; *Cutter* v. *Cochrane*, 116 Mass. 408; *Rollins* v. *Marsh*, 128 Mass. 116, 120; *Byington* v. *Simpson*, 134 Mass. 145; *Rogers* v. *Rogers & Brother*, 139 Mass. 440; *Hastings* v. *Lovejoy*, 140 Mass. 261, 265; *Thomas* v. *Barnes*, 156 Mass. 581, 584; *Abbott* v. *Doane*, 163 Mass. 433, 434–435; *Tobin* v. *Kells*, 207 Mass. 304, 311; *Torrey* v. *Adams*, 254 Mass. 22. The facts of the present case bring it within this principle. The defendant without denying its existence contends that the plaintiffs here never *refused* to proceed with the original contract. It is true that the word refuse does not occur in the report, but when the plaintiffs said they "would have" to charge more and the defendant agreed to pay more, it could be found that the latter was given to under-

stand that he must pay more if the plaintiffs were to go on.

It has not been argued and we do not consider whether by reason of the defendant's promises and the plaintiffs' performance the defendant is estopped to deny the plaintiffs' claim. See Williston on Contracts (Rev. ed.) §§ 139, 679, 689, 691–693; *Sheehan* v. *Commercial Travelers Mutual Accident Association*, 283 Mass. 543, 551.

The denial of the rulings requested by the defendant was right.

*Order dismissing report affirmed.*