L. W. Severance & Sons, Inc.[1] *vs.* John C. Angley & another.[2]

Plymouth.    January 3, 1955. — April 1, 1955.

Present: Qua, C.J., Lummus, Wilkins, Spalding, & Counihan, JJ.

*Contract*, Modification, Building contract, Sealed contract. *Practice, Civil*, Auditor: retrial after report. *Evidence*, Extrinsic affecting writing. *Estoppel*.

A party to an action, upon seasonably claiming his rights to a jury trial and to introduce evidence following the filing of the report of an auditor whose findings were not to be final, may introduce at the jury trial the same evidence heard by the auditor as a basis for findings contrary to those of the auditor. [437]

Evidence warranted a finding that during the progress of work under a contract for remodeling a house providing for payment for labor, materials and subcontractors, with an estimate of the total cost but no fixed contract price, the parties modified the contract by agreeing that the total cost of the completed job should be a specified amount. [438]

In an action by a builder upon a building contract originally providing for payment for labor, materials and subcontractors without a fixed contract price, the fact that the owner, subsequent to an alleged modification of the contract setting a specified amount as the total cost, paid the builder more than such agreed cost did not estop the owner from setting up the modification as a defence. [438–439]

---

[1] On motion Roger L. Severance was made a party plaintiff but at the trial he discontinued in open court.

[2] Florence H. Angley, his wife.

A sealed contract before breach may be modified by the parties orally. [439]

The parol evidence rule has no application to an oral modification of an existing written contract. [439]

CONTRACT. Writ in the Third District Court of Plymouth dated November 4, 1952.

Upon removal to the Superior Court, the action was referred to an auditor and afterwards tried before *Brogna,* J.

*Alton F. Lyon,* (*Elmer R. Egan* with him,) for the defendants.

*Jack Sturtevant,* (*Eben G. Townes* with him,) for the plaintiff.

COUNIHAN, J. This is an action of contract to recover a balance due for labor and materials furnished the defendants by the plaintiff under an alleged written contract. The action was referred to an auditor whose findings of fact were not to be final. G. L. (Ter. Ed.) c. 221, § 56. Upon the coming in of the auditor's report, the defendants were permitted to file a substitute answer with the understanding that it would raise no issues not previously raised before the auditor. This answer contained a general denial and inter alia claims of intentional deviation from the contract by the plaintiff and modification of the contract. After the entry of the auditor's report the rights to trial by jury and to the introduction of evidence were seasonably claimed by the defendants. Rule 88 of the Superior Court (1932). At the close of the trial the judge on motion ordered that a verdict be returned for the plaintiff in the sum of $12,737.27 which was the balance claimed by the plaintiff with interest. The action comes here upon the exception of the defendants to this order. There was error in directing a verdict for the plaintiff.

It was agreed at the trial that the treasurer of the plaintiff who was also its general manager had authority to bind the plaintiff, and also that the statements and acts of either defendant were binding upon each of them, both as agent and as principal.

At the trial the auditor's report was in evidence and the only oral testimony came from the treasurer of the plaintiff and the defendants. The contract,[1] the specifications, a letter dated May 4, 1951,[2] from the plaintiff to the defendants, another letter dated May 20, 1950,[3] from the plaintiff to the defendants, and plans of remodeling the house were in evidence as exhibits and are properly before us.

The auditor's report discloses the following findings. The

[1]                               "CONTRACT BETWEEN

Dr. and Mrs. John C. Angley
School Street, Bryantville, Massachusetts
hereinafter called the OWNER, and L. W. Severance & Son, Inc.
hereinafter called the CONTRACTOR, for the performance of work according to the specifications itemized below.

WITNESSETH: In the performance of this work, it is mutually agreed and understood: That the Contractor will make alterations to the property at School Street, Bryantville, Mass., as directed by the Owners. Carpenter labor will be provided at the rate of $2.25 and $2.50 per hour, and laborers and truck driver for the rate of $1.50 per hour. Contractor will be General Contractor and supervise all workmen including Sub-Contractors. All stock, labor and sub-contractors will be billed and paid weekly. It is further agreed and understood: . . . 5. That the amount of this contract will be as any additional charges for extra work performed, shall be paid in full by the Owner within ten days after presentation of the bill by the Contractor, unless otherwise agreed in writing. Failure by the Owner to fulfill this clause, shall subject the entire amount including extra charges to an interest charge of 6% per annum from the date of the bill.

PRICE: It is agreed that the Contractor shall perform this work for the amount of $            Any extra work not specified in this contract will be charged additionally at a price agreed upon by both parties or at cost based upon the Contractor's prevailing wage rate if no agreement is made.
Witness our hands and seals this seventh day of May, 1951."

[2]                                                          "May 4, 1951
Dr. and Mrs. John C. Angley
School Street
Bryantville, Massachusetts

Dear Dr. and Mrs. Angley:

We have estimated cost of remodeling your home and offices in accordance with plans drawn by us under date of April 13, 1950, to be approximately twenty-seven thousand one hundred fifty dollars and seventy-seven cents ($27,150.77).
                                        Yours very truly,

                                        L. W. SEVERANCE & SON, INC.
                                        R. Severance
                                        Roger L. Severance"

[3] "We have given a lot of careful consideration to your problem of deciding whether to remodel your present house in accordance with plans drawn by us, or whether to move or wreck your present building, and build a new house on the same site. We have done extensive work in estimating costs under each method, and we feel definitely that in your particular case, it would be less expensive and to your advantage to remodel your present house in preference to building a new one. . . ."

defendants on May 7, 1951, were the owners of a house in the Bryantville section of Pembroke, which was about one hundred years old. It had ten rooms and a doctor's office which Dr. Angley used. They had occupied it for many years. They desired a modern house similar to one which they had seen in East Bridgewater. As a result in 1950 they talked with the treasurer of the plaintiff. He suggested (1) that they remove the house then on the land and build a new one, (2) that they sell that house and land and build a new house on another lot, or (3) that they remodel the present house. At that time he gave them an estimate of $26,000 as the cost of remodeling according to plans which the plaintiff had prepared. Nothing happened until a year later when they got in touch with the plaintiff and it informed them by letter of May 4, 1951, that it would do the work of remodeling for an estimated cost of $27,150.77. The increase in the estimate was due to a general increase in the cost of labor and materials. As a result the contract hereinbefore referred to was signed by all the parties. The plaintiff began work on May 29, 1951, and finished on January 5, 1952.

It would unduly prolong this opinion to recite in detail the findings of the auditor with respect to the work required to be done under the contract. The auditor found that labor and materials for certain changes in the original specifications and for certain extras were furnished by the plaintiff. The auditor also found that the plaintiff "performed its part of the written contract and that the charges made and submitted to the defendants, both for labor and materials as were furnished are reasonable and proper." He found also that the total final claim against the defendants was $49,570.22 on which they had been credited with payments of $37,409.49 leaving a balance of $12,160.73 with interest of $425.60 due the plaintiff.

At the trial there was evidence from the defendants that the plaintiff through its treasurer recommended the remodeling job. This is borne out by the letter of May 20, 1950. The contract, the letter of May 4, 1951, and the

specifications were all clipped together when the contract was signed. The plans were already in their possession. They relied upon the contract, the letter of May 4, 1951, the specifications, and the plans when they signed the contract. They knew that the contract was for labor and materials and that there was no set price in the contract. The doctor testified that he did not dispute any item of labor or materials allegedly furnished and that he had no knowledge concerning them. There was evidence that the defendants had about $13,000 in cash when the work was to begin and that the treasurer of the plaintiff assisted them in securing a mortgage of $13,500.

There was further evidence that on or about August 21, 1951, the defendants had a talk with the treasurer of the plaintiff. At that time the house was not completed and work on the office had not been started. Dr. Angley told the treasurer that he already had spent $23,000 and it was obvious that they were not going to be able to finish the job for $27,150.77, the estimated price. He said "it was absolutely imperative that he know how much it was going to cost over and above the contract." The treasurer "blamed the plumbers as being one of the causes of the great expense and told him that it would run $6,000 over the original estimate." The doctor "repeated the figure of $6,000 and asked him if he was sure that was going to be all that it would cost because he didn't have to build his office that year and they could do it after the completion of the house." The treasurer told him "that it would not cost more than $6,000 above the estimate to finish everything including the office." Dr. Angley relied upon this statement and told the treasurer to go ahead and complete it for that amount. Dr. Angley testified that he did not have the additional $6,000, and the treasurer arranged for a mortgage of $5,000 which together with $1,000 of money of the defendants would pay for the cost of completion.

The auditor found that certain labor and materials were furnished because of changes in the specifications and extras. Without enumerating these in detail it is enough to say

that the auditor found that such changes and extras consisted of twenty-five items. He found that the cost of such items was $5,835. The evidence from the defendants was that only six changes and extras were furnished by the plaintiff. There was also evidence that certain work called for by the specifications was not done and that the defendants did this work themselves at a cost of over $1,000.

In *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, the effect of a report of an auditor, whose findings of fact are not final, in a trial before a jury was discussed. At page 566 it was said, "Each and every finding of fact . . . reported by an auditor, becomes 'prima facie evidence.' That expression has acquired a definite legal meaning in this Commonwealth. . . . An analysis of that expression shows, first of all, that prima facie evidence is 'evidence,' remains evidence throughout the trial, and is entitled to be weighed like any other evidence upon any question of fact to which it is relevant. . . . When does prima facie evidence, such as a finding by an auditor, lose its artificial legal force and compelling effect, and retain only its inherent persuasive weight as a piece of evidence to be considered with other evidence in finding the fact? The rule as to auditors is, that a finding of fact by an auditor retains the artificial legal force and compelling effect which it has by virtue of being 'prima facie evidence,' *until, and only until, evidence appears that warrants a finding to the contrary*" (emphasis supplied).

The plaintiff argues that the defendants cannot prevail because they called no new witnesses and offered no evidence at the trial other than that which was offered at the hearing before the auditor. We have no way of knowing what evidence the auditor heard because no transcript of such evidence is before us. Even if the assertion of the plaintiff be true in this respect, it is of no importance because the defendants may have a retrial before the jury even upon the same evidence heard and considered by the auditor. *Lovell* v. *Commonwealth Thread Co. Inc.* 280 Mass. 243, 246–247.

The primary question for us to determine therefore is whether there was evidence at the trial that warranted a

finding by the jury contrary to the findings of the auditor. We are of opinion that there was. In the first place there was evidence of a modification of the original contract on or about August 21, 1951, whereby the plaintiff agreed to complete the work called for by the contract for $6,000. The agreement of the plaintiff was based upon adequate consideration. *Munroe* v. *Perkins*, 9 Pick. 298, 303. *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 194–195. *Blood* v. *Dewey*, 315 Mass. 500, 502. *Swartz* v. *Lieberman*, 323 Mass. 109, 112–113. We think that this question of modification was one of fact to be determined by the jury. In the second place there was a marked difference between the evidence of the defendants as to the nature and extent of the changes and extras furnished by the plaintiff and the findings of the auditor on this aspect of the case. The auditor found the cost of such changes and extras to be $5,835. In view of the evidence of the defendants we think that the jury if permitted could warrantably have made a different finding.

In its brief the plaintiff argues that the statement of Dr. Angley at the trial that he did not dispute any item of labor or materials allegedly furnished is binding upon the defendants as an admission that all the labor and materials claimed to have been furnished were actually furnished. But this statement was qualified by a further statement by the doctor that he had no knowledge concerning what labor and materials were furnished although he had been on the premises daily as the work progressed. At most the admission of Dr. Angley related only to the amount of labor and materials which went into the house and did not affect other defences relied upon by the defendants.

The same is true of the argument of the plaintiff that the defendants are estopped to set up a modification of the original contract on or about August 21, 1951, because after that they paid the plaintiff $4,258.72 in excess of the cost agreed upon by such modification. At best this excess payment was only evidence which should be considered by the jury with all other evidence in the case. There

was nothing in such evidence to conclusively bind the defendants.

Finally the plaintiff argues that as matter of law the modification of the original contract relied upon by the defendants was not good because a contract under seal cannot be modified by a subsequent oral agreement. This is not the law and the cases relied upon by the plaintiff do not sustain that proposition. The law which is otherwise is to be found in *Hastings* v. *Lovejoy,* 140 Mass. 261, 264, *Tashjian* v. *Karp,* 277 Mass. 42, 45–46, and *Elm Farm Foods Co.* v. *Cifrino,* 328 Mass. 549, 556. See Restatement: Contracts, § 407; Williston, Contracts (Rev. ed.) §§ 1836, 1837.

There is a suggestion in the plaintiff's brief that somehow the parol evidence rule has some bearing upon the defendants' claim that the original contract was modified by the oral agreement on or about August 21, 1951. The parol evidence rule has no application to the situation in the case at bar where it could be found that a new oral contract was entered into between the parties which superseded the original contract.

*Exceptions sustained.*