**Paul H. ADAMS**
vs.
**John ELLIOTT & another[1]**
**and four companion cases[2]**

### No. 342

District Court/Hampden, ss.
Appellate Division/Western District
Trial Court of the
Commonwealth of Massachusetts

**December 30, 1982**

[1] Daniel E. Mahoney and Angeline Z. Mahoney, third party defendants
[2] (No. 343) Francis Beaudoin vs. John W. Elliott, Angeline Z. Mahoney and Daniel E. Mahoney; (No. 344) Paul Gagner, doing business as Gagner Woodworking vs. Daniel E. Mahoney and Angeline Z. Mahoney vs. John W. Elliott, Trustee, J & M Elliott Realty Trust, and John W. Elliott; (No. 345) Kesseli & Morse vs. John W. Elliott, Daniel E. Mahoney and Angeline Z. Mahoney; (No. 346) W. H. Sawyer Lumber Co. vs. Daniel E. Mahoney and Angeline Z. Mahoney vs. John W. Elliott, Trustee, J & M Elliott Realty, and John W. Elliott.

**Charles B. Swartwood III,** counsel for defendants Daniel E. and Angeline Z. Mahoney.

**Christy A. Pano,** counsel for defendants John W. Elliott and J & M Elliott, Realty Trust.

**Robert E. Longden, Jr.,** counsel for plaintiff W. H. Sawyer Lumber Co.

**Paul J. O'Brien,** counsel for plaintiff Francis Beaudoin.

**Michael A. Nigro,** counsel for plaintiff, Paul H. Adams.

**Steven A. Kressler,** counsel for plaintiff Kesseli & Morse.

**Donald Cournoyer,** counsel for plaintiff Paul Gagner, d.b.a.

## DECISION and ORDER

These causes came on to and were heard in the Appellate Division for the Western District sitting at Springfield upon reports as established as per Dist/Mun. Cts. R. Civ. P. 64(e) of proceedings from the First Southern Worcester Division and it being found that the Trial Judge erred.

It is hereby

ORDERED: That the Clerk of the First Southern Worcester Division make the following entries in each of said cases on the docket of said Court as follows:

**Docket No. 23888 (A.D. No. 346)**

Judgment for plaintiff vacated and judgment entered for the defendants.

Damages in counterclaim of Third-Party Defendant, John Elliott, vacated and the sum of $14,997.64 entered.

**Docket No. 197850 (A.D. No. 345)**

Judgment for plaintiff vacated and judgment to enter for the plaintiff as against John Elliott in the sum of $1,906.18. Also, to be entered: judgment for the defendants.

**Docket No. 23744 (A.D. No. 344)**

Judgment for the plaintiff vacated and judgment entered for the defendants.

**Docket No. 210041 (A.D. No. 343)**

Judgment for the plaintiff vacated and judgment for plaintiff against John Elliott in the sum of $1,634.00. Also judgment entered for the defendants, Daniel E. Mahoney and Angeline Z. Mahoney on Count I only.

**Docket No. 197404 (A.D. No. 342)**

Judgment for the plaintiff affirmed with judgment for the third-party plaintiff vacated and to enter for the third-party defendants.

**William T. Walsh, Justice**
**Allan McGuane, Justice**
**Bernard Lenhoff, Justice**

OPINION filed herewith

**Robert E. Fein, Clerk**

## OPINION

**Lenhoff, J.** These proceedings involve five (5) separate complaints that were consolidated and heard by the Trial Court. Each of said complaints concerned a subcontractor who had supplied labor and/or materials in the construction of a dwelling and who sought to recover therefor. Further pleadings in one or more of the cases gave rise to complaints of both contractor and contractees against one another through third-party actions.

The dwelling constructed was a single family structure situate on Old Worcester Road in Charlton, Massachusetts.

(Alongside the names of the described parties are the shortened name of each, so set forth for purposes of brevity, in parenthesis, as mentioned hereinafter.)

The contractees or homeowners are Daniel E. and Angeline Z. Mahoney (**Mahoneys**).

The contractor or builder is John Elliott (**Elliott**).

The trust that conveyed the land on which the dwelling was erected is J & M. Elliott Realty Trust (**Trust**).

The lumber and building material supplier is W. H. Sawyer Lumber Co. (**Sawyer**).

The stone and cement supplier is Kesseli

and Morse (**Kesseli**).

The cabinet maker is Paul Gagner (**Gagner**).

The house framer and finisher is Francis Beaudoin (**Beaudoin**).

Lastly, the tile setter is Paul H. Adams (**Adams**).

The five (5) complaints are as follows:—

**Case No. 346** — Sawyer against the Mahoneys; the Mahoneys, as third party plaintiffs, against Elliott and Trust; and, Elliot filed a counterclaim and crossclaim against the Mahoneys.

**Case No. 345** — Kesseli against the Mahoneys and Elliott.

**Case No. 344** — Gagner against the Mahoneys; Mahoneys, as third party plaintiffs, against Elliott and Trust with their counterclaims against the Mahoneys.

**Case No. 343** — Beaudoin against the Mahoneys and Elliott.

**Case No. 342** — Adams against Elliott; Elliott, as third party plaintiff, against the Mahoneys.

The following applies to all five (5) cases and is a summary of the evidence as established resulting from a petition to establish report:—

There was evidence at trial that tended to show that Trust and Elliott, individually, entered into a written agreement dated January 15, 1975 with the Mahoneys. Said agreement provided that Elliott would perform all the labor and supply all materials to erect a dwelling for the Mahoneys, as per specifications, for the sum of $40,000.00, subject to additions and deductions to be made in writing.

The land on which the house was to be erected was conveyed to the Mahoneys by Trust on February 14, 1975.

Prior to the contract's execution, Elliott commenced work, and continued until April, 1975 when he ceased such work because the Mahoneys failed to pay him funds to enable him to liquidate outstanding bills incurred in the construction.

At the time Elliott stopped working, the

Mahoneys had paid him $39,200 and he had then paid out on his job, according to his records, a total sum of $42,095.01. At his cessation of work activity, several items in the contract schedules and specifications had not been completed.

Subsequent to Elliott's action in stopping work, the Mahoneys claimed they completed the construction of the dwelling expending therefor $10,663.87 paid to subcontractors and material men.

During the course of construction, Elliott claimed additional funds for extras that were made for changes and additions made.

In addition to the above summary, the trial court made the following findings that also apply to each of the five (5) cases:—

Despite the signed agreement of the parties wherein there is verbiage that "all additions and deductions shall be in writing and signed by all the parties", the Mahoneys who were closely related[3] to Elliott, by reason of such relationship caused an otherwise fully-expressed legal business relationship to be disregarded. This resulted in Mahoneys exercising control over the construction and Elliott's performance of his duties. He was clearly operating as their agent, not as an independent contractor.

To illustrate examples of such control, the trial judge points out in his findings that (1) Mahoneys bought paint; (2) Mahoneys bought some electrical fixtures; (3) they did different things and paid for different things; and, (4) ordered different extras and changes, i.e., windows, sliding glass doors, solarium floors, elimination of air conditioning, asking that house be left natural outside (unpainted), asked for an artesian well, heating and plumbing changes, studding of the cellar, a different tub, wainscoting, tile, a fire door, extra kitchen appliances.

When informal additions and construction changes were made by the Mahoneys, Elliott did prepare change orders that the Mahoneys did not sign.

In April, 1975, Elliott met with the Mahoneys and informed them that the house could not be constructed for $40,000 and that money was running out. Elliott produced an account showing he had been paid $39,000 by Mahoneys, that he paid out on the job $42,095.01; that there was due on bills then outstanding $21,407.69; and, that without profit or fee, the house would cost $63,504.64. The Mahoneys assured Elliott not to worry and they would obtain more money from the bank so various bills could be paid with Elliott to finish the house. There was no dissatisfaction voiced as to Elliott's work. The Mahoneys did obtain $7,000, giving Elliott only $1,000. As Elliott failed to receive a substantial sum, he stopped work in April or May, 1975 before the house was finished. Again in May, 1975 Elliott asked the Mahoneys for additional funds and received none.

The trial judge found that Elliott substantially performed his agreement in good faith.

In addition to the above, the trial court found that after the agreement was signed, the parties orally agreed to construction changes and extras; that rather than there being a fixed price contract for the house, it became open-ended; that in April, 1975, it appeared the actual cost would be $60,000 or more; that the refusal of the Mahoneys to pay about $20,000 to enable payment of builder's and supplier's bills, was a breach of their agreement; that their obtaining additional funds and not dealing with Elliott in a proper manner constituted conduct that was a willful default on the part of the Mahoneys; that such default on the part of the Mahoneys prevented Elliott from performing, thereby excusing him; that he had substantially performed his agreement in good faith; and, that Elliott was entitled in quantum meruit for the fair value of his work amounting to $19,602.84. (Said sum of $19,602.84 was calculated by the trial judge as follows: $21,407.69 less $4,650.00 (plumbing and heating) less $2,257.00 (for rugs) less

---

[3] Mrs. Mahoney is the sister of Elliott.

$1,400.00 (for paving driveway) equals $13,100.69 plus $6,502.15 for extras).

On a case by case basis, we state evidence disclosed by the established report with findings of the trial judge mentioned that are considered pertinent.

As to **Case No. 346** (Sawyer's Case), the evidence tended to show that Elliott arranged with Sawyer the purchase of materials for the construction. Sawyer agreed to supply same if the Mahoneys authorized its mortgage bank to release $10,000, the anticipated total needed for said materials. The Mahoneys did execute such authorization and delivery thereafter took place. At various times, checks totalling about $12,000 payable to the Mahoneys, Elliott and Sawyer were endorsed out of which Sawyer received $7,846.34. Sawyer continued to deliver supplies to the construction site, the total of which exceeded $10,000.00. Sawyer had set the account up in Mahoneys name. All orders were placed with Sawyer by Elliott. Mahoneys on two occasions went to Sawyer's place of business to pick out cabinets and other materials.

The trial judge found that Sawyer made it clear to the Mahoneys that he would extend no credit to Elliott. It insisted on a written assignment of construction funds. That although the delivery of materials exceeded the estimated $10,000, there was an understanding as to who was responsible that continued. At no time did the Mahoneys ask Sawyer to stop billing them or for a change in the arrangement. In dealing with Sawyer, Elliott acted as agent for the Mahoneys and they had power to control the details of Elliott's performance of his duties because they had complete power to purchase or not from Sawyer.

The trial court found for Sawyer against the Mahoneys in the sum of $3,544.10.

In the third party action, the court found for the third party defendants, Elliott and Trust.

In the counterclaim, the court found for Elliott in the sum of $19,602.84.

In the crossclaim, the court found for the defendants, Mahoneys, as there is no finding against Elliott in the original action.

As to **Case No. 345** (Kesseli Case), the evidence tended to show that Elliott made arrangements with Kesseli for materials, on an open account from September 21, 1971 to May 9, 1975. All orders were sent by Kesseli to Elliott for deliveries to the job site of the Mahoneys' dwelling. They totalled $3,155.31. Kesseli never talked to the Mahoneys nor did Kesseli ever attempt to collect from them until this action was commenced.

The trial court found that in 1975 Kesseli dealt with Elliott only as an agent of the Mahoneys; knew Elliott alone was a bad risk; knew or should have known that Mahoneys controlled Elliott in constructing their dwelling; and, knew that the Mahoneys' credit was behind Elliott. As there was a payment on Kesseli's bill, a balance remaining due is in the sum of $1,906.18 due from Elliott; but as agent of the Mahoneys, he is entitled to reimbursement for expenses incurred by him in performing his duties.

The trial court found for Kesseli against the Mahoneys in the sum of $1,906.18.

In the **Gagner Case — No. 344,** the evidence tended to show that Gagner was hired by Elliott to construct and install kitchen cabinets for the Mahoney house. Upon completion of the work, Gagner billed Elliott for $1,167.00. Gagner was contacted by the Mahoneys, at the direction of Elliott, to pick out colors and styles of cabinets to be installed. They did just that and had no discussion of the amount to be charged or the terms of payment. Gagner never sent a bill or demanded payment from the Mahoneys. The Mahoneys were contacted by Gagner after Elliott refused to pay and told him to seek payment from the Mahoneys.

The trial court found for Gagner against the Mahoneys in the sum of $1,167.00 and for the defendants, Elliott and Trust.

In the **Beaudoin Case — No. 343,** the evidence tended to show that Elliott hired Beaudoin to do finish work on the

Mahoney house. At the time this work was done, he was doing other work for Elliott. He had no talk with the Mahoneys concerning the finishing of their house. All statements were sent by Beaudoin to Elliott. He never contacted the Mahoneys regarding the work on their home nor did he ever send them a statement.

The trial court, in this matter, found that Elliott hired Beaudoin while acting as agent for the Mahoneys and, as such, is entitled to indemnifications.

In consequence thereof, the trial court found for Beaudoin against the Mahoneys on Count I in the sum of $1,634.00 and for Elliott; and, in Count II, as against Elliott only, for the sum of $324.87 (work other than on Mahoney dwelling).

In the **Adams Case — No. 342**, the evidence tended to show that Elliott contracted with Adams for certain tile and slate work to be done on the Mahoney house for an agreed sum of $950.00. Adams completed his work and billed Elliott $950.00. Adams never spoke to the Mahoneys before he commenced work and they never discussed costs for same. Only after Elliott refused to pay, he attempted to collect from the Mahoneys.

The trial court found that although Elliott dealt with Adams, he was controlled by the Mahoneys and acted as their agent with their authority; and, that Elliott is liable to Adams for $950.00 but he is entitled to indemnification by reason of his relationship with the Mahoneys as their agent.

"In consequence of the above, the trial court found for Adams against Elliott in the sum of $950.00; and, in the Third Party complaint, he found for Elliott against the Mahoneys for $950.00.

Finally, the trial court further found that the claims of each subcontractor, Sawyer, Kesseli, Gagner, Beaudoin and Adams are contained within the Elliott counterclaim net award of $19,602.84.

The report here presented to the Appellate Division was established pursuant to the filing of a petition as per Dist/Mun. Cts. R. Civ. P. 64(e). We have seen fit to supplement same by considering evidence in the trial judge's findings, to the end that we possess a more comprehensive view of the evidentiary picture. **Olofson v. Kilgallon**, 362 Mass. 803, 804-805 (1973). **Haverhill Builders Supply, Inc. v. Ortins**, 58 Mass. App. Dec. 65, 67 (1976).

The Mahoneys claim they are aggrieved by the trial court's denial of their submitted requests for rulings of law.[4]

---

[4] (1) Since Elliott's contract with the Mahoneys specifies a lump sum compensation for work and materials to be provided, Elliott is bound to perform the specified labor and to provide the requisite materials at the price stipulated in the contract, even though he loses money in discharging his contractual obligations. (2) Elliott cannot recover an amount in excess of his contract price for performing the work required by the terms of the contract for construction of the Mahoneys' house even though he encounters unexpected difficulties or expenses in performing the work. (3) Elliott cannot recover the extra work performed on the Mahoney house because under the terms of their contract a written agreement was required and none was made. (4) Since Elliott failed to obtain a written authorization from the Mahoneys for the purchase of certain tangible personal property to be installed in their house, he may not recover for the value of those items. (5) Any entitlement by Elliott for a fair price for labor in excess of that already required by the original written agreement, performed pursuant to an enforceable oral agreement for additional work, is subject to offsets due to Elliott's failure to perform the work required under the original contract. (6) Since Elliott materially breached his contract with the Mahoneys by not completing the house, the Mahoneys are entitled to have the unfinished work completed by others at a reasonable price. (7) The Mahoneys never promised to pay any of Elliott's subcontractors and even if they did, that promise would be unenforceable because it was not in writing and violates the Statute of Frauds which requires that an oral promise to pay the debt of another must be in writing. (8) Elliott's subcontractors are not entitled to recover against the Mahoneys for Elliott's failure to pay them for their labor and materials. (9) Since there was no contract between the Mahoneys and Elliott's subcontractors for payment of their supplying the labor and materials for the construction of the Mahoney house, they are not entitled to recover against the Mahoneys even though the Mahoneys ultimately received the use of their house, which was enhanced in value by the labor and materials of said subcontractors. (10) The Mahoneys obligation to W. H. Sawyer was a limited promise to pay a specified amount which was received by Sawyer and which discharges the Mahoneys' obligation to Sawyer.

A justice hearing a case without a jury acts in a dual role, being both the judge of the law and the finder of facts. He must be guided by adopting correct rules of law; and, thus guided, find the facts. When confronted by proper requests, he must state the law that governed him as the trier of facts in order that the right of review can be presented to enable the reviewing tribunal to determine whether he has or has not fallen into error. **Stella v Curtis,** 348 Mass. 458, 461. (1965). **Cameron v Buckley,** 299 Mass. 432, 433 (1938). **Adamaitis v Metropolitan Life Insurance Co.,** 295 Mass. 215, 219 (1936).

On appeal, the court should be fully informed as to the basis of the trial judge's decision. **Cormier v Carty,** Mass. Adv. Sh. (1980) 1783, 1785. **Markell . v Sidney B. Pfeifer Foundation,** Mass. App. Ct. Adv. Sh. (1980) 557, 560. And, it is the duty of the Appellate Division to deal with the questions reported and no others. **James J. Derba, Inc. v Hamilton Service, Inc.,** 355 Mass. 127 (1969). **Kelsey v Hampton Court Hotel Co.,** 327 Mass. 150, 152 (1951).

Generally, the Appellate Division does not review findings of fact that are not required to be made in the absence of a request for a ruling as to the sufficiency of the evidence to warrant such finding. **Reid v Doherty,** 273 Mass. 388, 389 (1930) Cf. **Sechrest v Safiol,** Mass. Adv. Sh. (1981) 1150, 1152, fn. 3. Also, it may review the question as to whether, as a matter of law, the ultimate finding is either warranted or required by facts found. **Soutier v Kaplow,** 330 Mass. 448, 450 (1953).

We now turn to the denied rulings requested to ascertain whether the trial judge was correct in denying same.

Requests one (1) through six (6), inclusive, set forth accurate statements of the law of contracts. However, each request is based on facts that are contrary to the facts found by the trial judge. **Gidwani v Wasserman,** 373 Mass. 162, 166 (1977). **Loftus v Lauf,** 329 Mass. 374, 377 (1952). **Mahoney v Norcross,** 284 Mass. 153 (1933).

Request No. 1 substantially states that a contractor is bound to perform the labor and provide materials at this contract's stipulated price ($40,000.00) even though he loses money in discharging his contractual obligations. The request as phrased ignores the trial judge's findings indicating that the actions, activities and conduct of the parties changed, altered or modified the originally executed agreement with repeated additions, deletions and deviations continuously taking place that constituted a waiver thereof. In effect, a substituted agreement with a so-called "open-ended" contract price resulted.

There is no question that parties to a written instrument can intentionally relinquish a known right called a "waiver", **Wedgwood v Eastern Commercial Travelers Accident Association,** 308 Mass. 463, 467 (1941) by orally changing its terms and "substitute a new oral contract by conduct and intimation, as well as by express words". **A. Leo Nash Steel Corp. v Southern New England Steel Erection Co., Inc.,** Mass. App. Ct. Adv. Sh. (1980) 515, 521. **L. W. Severance & Sons, Inc. v Angley,** 332 Mass. 432, 438 (1955). **Thomas v Barnes,** 156 Mass. 581 (1892). **Bartlett v Stanchfield,** 148 Mass. 394, 395 (1889). And, the waiver of a contract provision is a question of fact for the judge to determine. **Hayeck Building & Realty Co., Inc. v Turcotte,** 361 Mass. 785, 790 (1972). Such assent creating a substituted agreement also finds support in the law on a novation theory. Such novation exists when (1) there is a valid original obligation in place; (2) where the parties thereto agree anew expressly or by conduct; (3) the old agreement is extinguished; and (4) a valid new agreement results. **Larson v Jeffrey - Nichols Motor Co.,** 279 Mass. 362, 366 (1932). Under Massachusetts law, novation is a question of fact. **Clark v General Cleaning Co., Inc.,** 345 Mass. 62, 64 (1962). **Codman v Beane,** 312 Mass. 570, 575-576 (1942). Further, contracting parties can orally waive or vary its terms notwithstanding that the original contract

contains a provision therein requiring any modification thereof to be in writing. **J. P. Smith Co., Inc. v Wexler Construction Co. Inc.**, 353 Mass. 551, 555 (1968). **M. L. Shalloo, Inc. v Ricciardi & Sons Construction, Inc.** 348 Mass. 682, 685 (1965).

Consequently, the trial judge was correct in denying Request No. 1.

As Request No. 1 is keyed to the trial judge's ultimate finding or disposition concerning the claims of Elliott and the Mahoneys against one another, this matter merits discussion and evaluation to arrive at a conclusion as to whether the finding and/or disposition is warranted or required. See **Soutier v Kaplow, supra.** Said discussion will be documented herein following the review of the remaining requests.

Request No. 2 is framed in such fashion that it adheres to the contract in its original state, neglecting to acknowledge the trial judge's findings that it was altered, changed, or modified by the parties' conduct and activities.

Hence, this request was properly denied.

Requests 3 and 4 were rightfully denied as the trial judge found as a fact that additional work was requested and performed thereby effectively modifying the original agreement in spite of a provision therein requiring a writing to accomplish same. See **J. P. Smith Co., Inc. v Wexler Construction Co., supra.**

Request No. 5 was correctly denied, as a new contract relative to price was substituted for the original with the actual price to be determined as the work progressed. In fact, the trial judge did offset expenses incurred by the Mahoneys to complete the contract that was found by the trial judge to have been substantially performed in good faith by Elliott.

Request No. 6 contains therein facts that the trial judge did not find. This request states that Elliott materially breached the contract. The trial judge did find that the Mahoneys wilfully defaulted their performance of the contract by not making adequate payment to Elliott. Thus, Elliott was thereby excused from further performance. Therefore, the denial of this request was in order.

Request No. 7 inaccurately contains facts contrary to the facts found by the trial judge.

Findings of fact based on oral evidence are generally not reviewable. **MacDonald v Adamian,** 294 Mass. 187, 190 (1936). Such findings are not subject to revision and remain intact unless it is shown that the trial judge was plainly wrong. **Trovato v Walsh,** 363 Mass. 533, 535 (1973). **Barttro v Watertown Square Theatre, Inc.,** 309 Mass. 223, 224 (1941). **Adamaitis v Metropolitan Life Insurance Co.,** supra, at page 221.

In the case of **C.C. & T. Construction Co., Inc. v Coleman Bros. Corp.,** 8 Mass. App. Ct. 133, 135 (1979), the Court said:—

"A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Said Request No. 7 sets forth "The Mahoneys never promised to pay any of Elliott's subcontractors------." The trial judge found that at the request of one subcontractor (Sawyer), the Mahoneys executed a written authorization to their bank authorizing $10,000.00 of their construction loan to be paid to Sawyer. This authorization, contrary to the verbiage in the request that there was no writing, was written. It follows that the denial of this request was proper.

Request No. 8 reads "Elliott's subcontractors are not entitled to recover against the Mahoneys for Elliott's failure to pay them for their labor and materials."

Unless the trial judge was plainly wrong, (**Trovato v Walsh, supra**) or same is determined to be "clearly erroneous", (**C.C. & T. Const. Co. v Coleman Bros. Corp.**) his finding that Elliott in retaining

the subcontractors was acting as the agent of the Mahoneys and not as an independent contractor, must stand.

It is true that the existence of an agency relationship is usually a factual question. **Stern v Lieberman,** 307 Mass. 77, 81 (1940). Its existence often depends on the right to control details of the work. **Patterson v Barnes,** 317 Mass. 721, 722-723 (1945). Words or conduct justifying an expectation that one would be paid can give rise to an agency. **Mazeikis v Sidlauskas,** 346 Mass. 539, 543-544 (1963).

Although a person who contracts with an independent contractor agrees to have that contractor accomplish a certain result with the power to control the details of obtaining the desired end, **Herrick v Springfield,** 288 Mass. 212 (1934), he can make him his agent by authorizing him to purchase on his credit. **Paul v Forbes,** 148 Mass. 528, 529 (1889).

Though there may be some evidence to support the finding of the trial judge, we have reviewed all the evidence to decide if his ultimate conclusion is "clearly erroneous".

Elliott, unquestionably, was an independent contractor who was to perform a designated task. In every respect he acted in this capacity and subcontracted with each plaintiff. No evidence is present that any subcontractor expected payment from the Mahoneys save Sawyer who sought and obtained from the Mahoneys a written authorization to their bank for payment not to exceed $10,000.00. The fact that Sawyer sought same presupposes knowledge that without such authorization, Elliott would be the one to whom Sawyer would look for payment. There is no evidence that we detect that the Mahoneys appointed Elliott as their agent by authorizing him, expressly or impliedly, to purchase services or materials on their credit. The apparent evidence of agency relied upon by the trial judge as the basis of his agency conclusion is, in large part, the same evidence that justified the trial judge in finding the

original contract has been changed, altered or modified by the conduct of the parties. As we accord minimal credence to the creation of a principal and agent relationship by the activities and conduct of the Mahoneys, we are unable to conclude therefrom that same resulted in any implied agency authority in Elliott. Although the trial judge found evidence to support his finding of agency, we are left with the definite and firm conviction that a mistake has been committed. By reason thereof, the denial of Request No. 8 was error.

Request No. 9 contains therein facts not found by the trial judge thereby resulting in its denial being correct.

Finally, Request No. 10 also was incorrectly denied in the light of our comments before relative to Request No. 8. In passing, we note that Sawyer actually received less than $10,000.00 even though materials exceeding that figure were delivered to the construction site. However, the Mahoneys fully complied with its authorization as Sawyer's name appeared on bank issued checks in excess of $10,000.00. Sawyer retained the responsibility to assure itself at all times of payment at every stage of its ongoing business activities, if it desired optimum protection. Sawyer should have constantly and continuously monitored the situation to assure itself of its desired, secured position. Its failure to guard and protect its own interests cannot and does not enable recovery from a non-contracting party. It also could have assured itself total payment by availing itself of the provisions of Massachusetts General Laws, Chapter 254 (subcontractor's lien law). See **Superior Glass Co. Inc. v First Bristol County National Bank, et al,** Mass. App. Adv. Sh. (1979) 1844, 1852.

We now direct our attention to the ultimate disposition or finding of the trial judge resulting in damages being assessed in favor of Elliott against the Mahoneys in the sum of $19,602.84. The trial judge arrived at the aforestated sum by first finding $21,407.69, to be the gross sum

due Elliott. From said sum of $21,407.69, work found to have been performed by the Mahoneys to complete the contract after Elliott stopped work, was deducted by the trial judge — $4,650.00 (plumbing and heating), $2,257.00 (for rugs), and $1,400.00 (for paving the driveway). The sum then resulting was $13,100.69. To this amount, the trial judge added $6,502.15 (for extras) to thereby total $19,602.84.

These various subtotals and totals are most confusing prompting a close examination of the trial judge's calculations. We find in Exhibit 22 (referred to in the Report) presented by Elliott, all of the expenses or costs incurred and to be incurred to perform the construction of Mahoneys' dwelling. The total thereof is $63,504.64. Elliott paid $42,095.01 of the total and the balance remaining due according to the trial judge is $21,407.69. (There is a mathematical error and the corrected figure should be and is $21,409.63).

In view of the fact that the trial judge used the remaining balance due as the starting figure in his calculations, he undoubtedly concluded that the altered or modified ''open-ended'' contract price ended at $63,504.64. It is thusly stated because the trial judge deducted therefrom work completed by the Mahoneys that is included therein; namely, the $4,650.00 balance paid for plumbing and heating; $2,257.00 for rugs; and $1,400.00 to pave the driveway. Thereafter, his adding $6,502.15 that was previously found as extras is difficult to comprehend for the so-called extras also are included in the grand total of $63,504.64. In the evidence sifting process, the trial judge should not have treated previously found extras separately after considering them merged with other changes and deviations culminating in his finding that the contract became ''open-ended''. The use of the term ''open-ended'' apparently means that the eventual contract price was to be ascertained by actual labor and materials involved in the progress and process of construction.

Regardless of the mathematical problem above indicated, there is evidence to fortify and buttress the trial judge's findings of contract waivers and modifications, including the eventual contract price. There was no disclaimer of non-liability in excess of the original contract price when the Mahoneys were presented by Elliott with the $63,504.64 cost figures. Further, they demonstrated their intent by permitting and urging Elliott to fully complete the dwelling's construction and revealing that they would take immediate steps to obtain additional funds therefor. Subsequently, the Mahoneys presented a $1,000.00 payment to Elliott which the trial judge concluded was a willful default on the part of the Mahoneys. The trial judge then found an unintentional failure on the part of Elliott to continue performance; held that he had substantially performed the contract in good faith; and, caused judgment to enter in his favor against the Mahoneys.

We conclude that the trial judge's findings are warranted by the evidence and are supported thereby, except that the damages, as assessed, are in error. By the application of the correct method of determining damages in a case of this type, this error will be rectified.

A contractor who has been found to have substantially performed in good faith may recover his damages in quantum meruit, same being determined by finding the value of the contractor's labor and materials less any deductions necessary to complete the work. **DiMare v Capaldi,** 336 Mass. 497 (1957). **Morgan-National Woodworking Co., Inc. v Cline,** 324 Mass. 15, 17 (1949). **Burke v Coyne,** 188 Mass. 401, 404 (1905).

In the instant matter, the ''open-ended'' agreement stopped at $63,504.64 as found by the trial court, to include all items to construct the dwelling. Elliott had been previously paid a total of $40,200.00 thereby leaving a balance of $23,304.64. As the trial judge further found that the Mahoneys expended

$8,307.00 to complete the unfinished work, this sum is deducted from $23,304.64 to leave a balance due Elliott of $14,997.64.

Case by case, upon consideration of the foregoing, the following dispositions are in order:—

Case No. 346. As reversible error has been found, the judgment for the plaintiff is vacated and judgment is to enter for the defendants. All other dispositions made by the court below are affirmed, except that the judgment for the third party defendant in his counterclaim is vacated by reason of error and a new judgment is to be entered for said defendant in his counterclaim with damages assessed in the sum of $14,997.64.

(2) **Case No. 345.** As reversible error has been found, the judgment for the plaintiff is vacated and judgment is to enter for the plaintiff as against John Elliott with damage assessed in the sum of $1,906.18 plus judgment for the defendants, Daniel E. Mahoney and Angeline Z. Mahoney.

(3) **Case No. 344.** As reversible error has been found, the judgment for the plaintiff is vacated and judgment is to enter for the defendant. All other dispositions therein by the court below are affirmed.

(4) **Case No. 343.** As reversible error has been found, the judgment for the plaintiff is vacated and judgment is to enter for the defendant. All other dispositions therein by the court below are affirmed.

(4) **Case No. 343.** As reversible error has been found, the judgment for the plaintiff is vacated and judgment is to enter for the plaintiff against John Elliott with damages assessed in the sum of $1,634.00 plus judgment for the defendant, Daniel E. Mahoney and Angeline Z. Mahoney.

(5) **Case No. 342.** As reversible error has been found, the judgment for the plaintiff is affirmed with the judgment for the third-party plaintiff vacated and judgment to enter for the third party defendant.